**LOVEBRIGHT DIAMOND COMPANY, INC., Plaintiff,**

v.

**Robert SPRAGINS and Lone Star Diamond Company, Incorporated, Defendants.**

**No. 83 Civ. 3283 (KTD).**

United States District Court,
S.D. New York.

Oct. 24, 1983.

Arthur I. Winard, P.C., New York City, for plaintiff; Mark L. Rosenfeld, New York City, of counsel.

Bell, Kalnick, Beckman, Klee & Green, New York City, for defendants; Allen Green, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendants, Robert Spragins ("Spragins") and Lone Star Diamond Company,

Inc. ("Lone Star"), have moved pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss plaintiff's complaint on the ground that the court lacks personal jurisdiction over the defendants. Alternatively the defendants have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the third claim asserted by the plaintiff on the ground that it fails to state a claim upon which relief can be granted. Finally, pursuant to 28 U.S.C. § 1404(a) (1976), the defendants seek to have the plaintiff's action transferred to the Northern District of Texas should the motions to dismiss be denied. For the reasons stated below, the defendants' motion to dismiss the plaintiff's complaint on the ground of lack of personal jurisdiction is denied. The motion to dismiss the plaintiff's third claim for punitive damages is granted. Finally, the defendants' motion to transfer is granted.

## I.

### FACTS

In order to decide the jurisdictional issue, I will take the allegations set forth in the plaintiff's complaint and affidavits as true. *See Aurea Jewelry Creations, Inc. v. Lissona,* 344 F.Supp. 179, 180 (S.D.N.Y.1972). The plaintiff is a corporation organized and existing under the laws of New York and has its principal place of business in New York. The defendant, Lone Star Diamond Company ("Lone Star") is a corporation organized under the laws of Texas with its principal place of business in Texas. The defendant, Robert Spragins is the president of Lone Star and is a resident of Texas.

The plaintiff and Spragins entered into an agreement under which the defendant agreed to act as sales representative for the plaintiff in consideration for $750.00 per week drawn against commissions from the sale of the plaintiff's products. The defendant agreed to carry only the defendant's "Lovebright line and no other" and spend all his selling time promoting that line.

In the plaintiff's sworn affidavit in opposition to the defendant's motion, the deponent, president of Lovebright Diamond Company, Inc. ("Lovebright") states that he met with Spragins on or about April 20, 1978 at the plaintiff's offices in New York City to discuss the possibility of an employment contract. The meeting lasted approximately half a day and allegedly resulted in the defendant agreeing to act as the plaintiff's sales representative. Plaintiff's Affidavit at 2. According to the plaintiff, Spragins took a written agreement with him when he left the plaintiff's offices on April 20, 1978. In August of 1981, the plaintiff, Spragins, and Lone Star, a corporation formed by Spragins, entered into an agreement whereby Lone Star assumed all of the terms, conditions and obligations of Spragins' earlier agreement and agreed that all commissions would thereafter be paid to Lone Star.

The defendant thereafter allegedly breached the exclusive selling agreement and implied duties of loyalty and good faith by handling jewelry lines other than the plaintiff's line. Further, the defendant allegedly retained merchandise without accounting for such goods to the plaintiff. The plaintiff instituted an action in this court seeking compensatory and punitive damages for breach of contract and an implied duty of loyalty and good faith. The plaintiff seeks also to recover damages in the amount of the value of merchandise which was received by the defendants but for which no receipts from sales were forwarded to the plaintiff. The third cause of action asserted by the plaintiff is for punitive damages.

The defendants move here to dismiss the plaintiff's action on the grounds of lack of jurisdiction or alternatively to have the action transferred to the district court for the Northern District of Texas.

## II.

### DISCUSSION

A. Jurisdiction over Defendant—CPLR 302(a)(1)

The amenability of a nondomiciliary to suit in a federal diversity case is

determined under the laws of the forum state which in the instant case is New York. *See Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir.1963). In New York, the N.Y.Civ.Prac.Law ("CPLR") § 302(a) (McKinney 1972) (long-arm statute) provides the jurisdictional predicate necessary to subject a nondomiciliary to service of process by a New York court. Section 302(a)(1) of the CPLR provides that jurisdiction may be obtained over someone "who in person or through an agent ... transacts any business within the state" so long as the cause of action arises out of the transaction of that business. N.Y.Civ.Prac.Law § 302(a)(1) (McKinney 1972). Here, clearly, the plaintiff's cause of action arises from the employment agreement allegedly negotiated and entered into in New York. The next inquiry then is whether the constitutional requirement of minimum contacts is satisfied.

In order for a court to assert jurisdiction over a defendant, due process must be satisfied. There must exist certain minimum contacts with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

██ It is the nature and quality of the acts performed within the forum state, not the quantity of acts, that controls the issue of whether minimum contacts exist. *See e.g., M.L. Byers, Inc. v. HRG Productions, Inc.*, 492 F.Supp. 827, 830 (S.D.N.Y.1980) (three-day trip to New York was essential to the contract; the defendants "purposefully availed themselves of the privileges of conducting activities" within New York); *Development Direction, Inc. v. Zachary*, 430 F.Supp. 783, 785 (S.D.N.Y.1976) (although meetings in New York were brief they were essential to the procurement by the defendant of a contract). *But see Aurea Jewelry Creations, Inc. v. Lissona*, 344 F.Supp. 179, 180 (S.D.N.Y.1972) (insufficient contacts where defendant came to New York to sign a contract, attend jewelry show and pick up sample lines).

In *George Reiner & Co. v. Schwartz*, the defendant had responded to an advertisement placed in a Massachusetts' paper and traveled to Albany at the plaintiff's expense for an interview. 41 N.Y.2d 648, 363 N.E.2d 551, 394 N.Y.S.2d 844, 846 (1977). The defendant signed the employment agreement the same day and returned to Massachusetts. *Id.* 363 N.E.2d at 554, 394 N.Y.S.2d at 847. Holding that there was jurisdiction over the defendant, the *George Reiner & Co.* court reasoned that "a day which included interviewing, negotiating and contracting—the purposeful creation of a continuing relation with a New York corporation" constituted minimum contacts sufficient to subject the defendant to jurisdiction under New York's long-arm statute.

Here, the defendant met with the president of the plaintiff corporation at the plaintiff's office located in New York City to discuss the possibility of the defendant being employed by the plaintiff in a sales capacity. The parties discussed the term of the contract including the defendant's compensation, territory and duty to promote the plaintiff's product exclusively. Israels' Affidavit at 2. The defendant was also shown the line that he would be responsible for selling. The defendant left the plaintiff's offices with a copy of the typed agreement. The defendant was present in New York on approximately seven other occasions between the years 1979 to 1982 to view the line of jewelry that he was to sell and to discuss various terms of the employment agreement.

Thus, the "quality of the acts" here are such that the defendant came to New York, purposefully seeking employment, and "availed himself of the privilege of conducting activities in [this] jurisdiction, thus invoking the benefits and protection of our laws." *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 363 N.E.2d 551, 394 N.Y.

S.2d 844, 847 (1977) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The defendant's motion to dismiss for want of *in personam* jurisdiction is denied.

### B. Motion to Dismiss Plaintiff's Claim for Punitive Damages

The plaintiff alleges in its third claim that the defendant diverted opportunities and breached his duty of good faith and loyalty "with the knowledge that they would cause the plaintiff to be deprived of income and profit and with the sole intent to further their own financial gain." Plaintiff thereby seeks punitive and exemplary damages in the amount of $250,000. Complaint at 5–6.

■ In New York, there is no separate cause of action for punitive damages for pleading purposes. *See Bader's Residence for Adults v. Telecom Equipment Corp.,* 90 A.D.2d 764, 455 N.Y.S.2d 303, 304 (2d Dep't 1982). Moreover, even as part of the relief sought by the first two claims, the punitive damage claim is improper. In order to state a claim for which punitive damages may be awarded, wanton behavior or conduct evidencing a criminal disregard for civil liability on the defendant's part must be pleaded. *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 838 (2d Cir.1967). Further, as a general rule, punitive damage awards are improper in actions for breach of contract. *See Bader's Residence for Adults v. Telecom Equipment Corp.,* 90 A.D.2d 764, 455 N.Y.S.2d 303 (2d Dep't 1982); *Lubrication and Maintenance, Inc. v. Union Resources Co.,* 522 F.Supp. 1078, 1082 (S.D.N.Y.1981) (private not public wrong exists in breach of contract action). Thus, the defendant's motion to dismiss the plaintiff's third claim for punitive damages is granted.

### C. Venue

■ The defendant seeks to have a change in venue to the district court for the Northern District in Texas on the basis that such transfer would be for the convenience of parties, witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). For the following reasons, the defendant's motion to transfer is granted.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1976).

In deciding whether to transfer an action, the convenience of the parties, convenience of material witnesses, place where events occurred, access to sources of proof, and plaintiff's choice of forum are proper factors to consider. *See Durham Productions, Inc. v. Sterling Film Portfolio, Ltd., Series A.,* 537 F.Supp. 1241, 1243 (S.D.N.Y.1982); *Troyer v. Karcagi,* 488 F.Supp. 1200, 1207 (S.D.N.Y.1980). Thus, a balancing process must occur and normally the defendant will not be entitled to a change in forum where the relevant factors are about equal and the interests of justice do not argue for transfer. *See Hooker Chemicals & Plastics Corp. v. Diamond Shamrock Corp.,* 87 F.R.D. 398, 402 (W.D. N.Y.1980).

Here, Lovebright's place of incorporation and principal place of business is in New York. The corporate records and witnesses, if any, to the April 20, 1978 meeting are in New York. The original choice of forum was New York. The defendant corporation is subject to jurisdiction in both New York and Texas. On the other hand, the defendant is incorporated in Texas with its principal place of business in Texas. It's president, the defendant, Spragins, is a resident of Texas. Any witnesses to and records of the wrongful conduct complained of by the plaintiff are in Texas. Plaintiff's complaint alleges that beginning in January 1982, defendants began to handle competing jewelry lines, and to devote time, effort, and services to the promotion and sale of these other jewelry lines, in violation of defendant's exclusive sales agreement with plaintiff. Complaint at ¶ 9. Plaintiff further alleges that defendants' motive in violating their agreement was to divert business from plaintiff to competing jewelry lines. It is clear from these allegations that most

if not all of plaintiff's proof will come from witnesses and documents in Texas. All of defendants allegedly wrongful conduct took place in Texas. The only prejudice to the plaintiff is that it will have the added cost of transporting company officials to Texas and retaining counsel in Texas.

Because the prejudice to the plaintiff fails to outweigh the majority of the material witnesses' convenience and the interests of justice, I find that the transfer of this action to Texas is justified. *See Computer Horizons Corp. v. Knauer*, 483 F.Supp. 1272, 1273 (S.D.N.Y.1980) (transfer permitted where acts of the defendant with respect to breach of contract and circumstances surrounding the violation of a restrictive covenant and anti-competition clause were located in another district).

In sum, because there exists sufficient minimum contacts between the defendant and New York the motion to dismiss for lack of personal jurisdiction is denied. The balance of convenience to the parties and witnesses, and the interests of justice, however, dictate a transfer of this action. Accordingly, this action is transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) (1976).

SO ORDERED.