**OIL BASINS LIMITED, Plaintiff,**

v.

**The BROKEN HILL PROPRIETARY COMPANY LIMITED and BHP Petroleum Pty., Ltd., Defendants.**

**No. 84 Civ. 6620 (JMC).**

United States District Court,
S.D. New York.

March 7, 1985.
On Motion to Reopen July 18, 1985.

Donovan Leisure Newton & Irvine, New York City (Eric J. Lobenfeld, New York City, of counsel), Vinson & Elkins, Houston, Tex. (Ewing Werlein, Jr., D. Gibson Walton, J. Thomas Scott, Elaine Drodge Koch, Houston, Tex., Charles Alan Wright, Austin, Tex., of counsel), for plaintiff.

Sullivan & Cromwell, New York City (Roy H. Steyer, James H. Carter, Maria Foscarinis, Samuel W. Seymour, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Plaintiff's motion for an order compelling the parties to proceed to arbitration in New York is granted. 9 U.S.C. §§ 4 ["Section 4"], 206 ["Section 206"].

Plaintiff's and defendants' motions for a stay pending arbitration are granted. 9 U.S.C. § 3.

Defendants' motion for an order compelling the parties to proceed to arbitration in Australia is denied. 9 U.S.C. §§ 4, 206.

## FACTS

This action arises out of a contract ["Royalty Agreement"] between plaintiff and defendant Broken Hill Proprietary Co. ["BHP"], pursuant to which defendants are required to pay plaintiff royalties on hydrocarbons produced by BHP Petroleum Proprietary Ltd. ["BHP Petroleum"] in the offshore waters of Australia. Plaintiff brought this action in New York State Supreme Court. Plaintiff claims that an Australian excise tax and certain costs of production should not be deducted from the gross value of the hydrocarbons on which the royalty is calculated and requests a declaration as to computation, an accounting and damages of over $350 million. Defendants subsequently removed the action to this Court pursuant to 9 U.S.C. § 205, which permits removal to federal court of cases involving arbitration agreements covered by the Convention on the Recognition and Enforcement of Foreign Arbitrable Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, and 330 U.N.T.S. 38 ["Convention"], implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* ["Chapter 2"]. Jurisdiction is based upon 28 U.S.C. § 1331 and 9 U.S.C. § 203.

Plaintiff is a Bermudian corporation, the sole function of which is to act as trustee for the royalty payments specified in the Royalty Agreement. Defendants are Australian corporations. BHP is a large multinational corporation with an agent in New York City.

The Royalty Agreement expressly provides that all disputes arising as to "the construction meaning or effect of any clause ... or as to the rights obligations or liabilities of the parties under any clause ... shall be determined by arbitration." [1] Both parties acknowledge that the issue before the Court is governed by this arbitration clause. The only dispute concerns the location in which arbitration should

---

1. Affidavit of Roy H. Steyer, Exh. A, ¶ 11.

take place. After this action was filed, defendant BHP Petroleum sent plaintiff a letter that purports to commence arbitration proceedings. The next day, BHP Petroleum also commenced an action against plaintiff in the Supreme Court of Victoria at Melbourne to enforce arbitration. That court has not yet taken any action.

## DISCUSSION

Defendants contend that arbitration proceedings should be held in Australia because it is the forum most closely connected to the dispute, most convenient to the parties, and the country whose law will effectively govern the dispute. Plaintiff argues that the Court has no authority to compel arbitration in Australia absent an express provision in the Agreement specifying Australia as the situs of arbitration.

Defendants' arguments that Australia is the most convenient and appropriate forum are not without force. That country seems to be the locus of most witnesses; the principal representatives of all parties to have taken part in preliminary discussions concerning arbitration appear to be located, at least partially, in Australia; and the site of production of hydrocarbons is there. The only apparent contact that the litigation has with New York arises out of the conflicts of law clause in the Royalty Agreement, which specifies that New York law is to govern interpretation of the agreement unless "otherwise required by the law of the place where the said hydrocarbons are produced or as otherwise herein provided." [2]

Defendants have not moved to dismiss under 28 U.S.C. § 1404 on grounds of *forum non conveniens,* however. The Court is unwilling to order such a drastic remedy *sua sponte,* particularly in light of the ongoing dispute concerning the Australian court's jurisdiction over plaintiff. The question before the Court, then, is whether the Court has authority to compel arbitration in Australia.

█ The Federal Arbitration Act makes it clear that in domestic cases a federal district court may only compel arbitration in its own district. *See* 9 U.S.C. § 4; *Couleur Int'l Ltd. v. Saint-Tropez West,* 547 F.Supp. 176 (S.D.N.Y.1982); *Lawn v. Franklin,* 328 F.Supp. 791, 793 (S.D.N.Y. 1971); *see also Netherland Curacao Co., N.V. v. Kenton Corp.,* 366 F.Supp. 744, 745–46 (S.D.N.Y.1973) (same result, relying upon Section 4, although apparently an international case). *But cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro,* 577 F.Supp. 616, 625 (W.D.Mo.1983) (suggesting that under Section 4 the court has discretion to decide site of arbitration, but compelling parties to proceed in court's own district). Thus, if the contract specifies a locale for arbitration, the Court can merely stay the action, *see Texaco, Inc. v. American Trading Transp. Co.,* 644 F.2d 1152, 1154 (5th Cir.1981), or dismiss it, *see Couleur Int'l, Ltd. v. Saint-Tropez West, supra.*

█ In an international dispute covered by Chapter 2 of the Federal Arbitration Act, the rules are broadened by the provisions of Section 206, which permits a court to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. Thus, in implementing the Convention, Congress expanded the federal court authority to permit it flexibility in addressing international agreements. A letter from the Department of State, transmitting the draft legislation to the Speaker of the House, describes the nature of this new authority:

> Section 106 [*sic*] permits a court to direct that arbitration be held *at the place provided for in the arbitration agreement.* Since there may be circumstances in which it would be highly desirable to direct arbitration within the district in which the action is brought and inappropriate to direct arbitration abroad, Section 206 is permissive rather than mandatory.

**2.** *Id.* ¶ 12.

H.R.Rep. No. 1181, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 3601, 3604 (emphasis added). This letter suggests that when there is a locale specified in the agreement, a court may, if appropriate, direct arbitration to take place at that locale. Section 206 does not, however, expressly give or deny authority to direct arbitration to take place in a locale unspecified in the agreement between the parties, other than the district in which the court sits.

■ Because Chapter 1 of the Arbitration Act is incorporated into Chapter 2 "to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention," 9 U.S.C. § 208, the inquiry must extend to Section 4. Section 4's requirement that a court direct arbitration in its own district conflicts with, and is therefore superseded by, Section 206 to the extent that the parties specify an arbitration site in the contract. However, neither section gives the Court discretion to select an unspecified site outside its district and Section 4 expressly precludes such discretion. Thus, on the face of the statute, Chapter 2 does not appear to contradict Section 4's requirement that arbitration be compelled in the court's district except when the contract specifies a location.

The legislative history, also, gives no indication that Congress intended to expand Section 4 to the extent contemplated by defendants. The case law is equally sparse. In *Soundview Shipping Ltd. v. Keys Development & Trading Pty. Ltd.*, 1984 A.M.C. 1346, 1350 (S.D.N.Y.1983), the court was confronted with an arbitration agreement that specified Australia as the site of arbitration for all disputes about events that took place in Australia. The case was covered by Chapter 2, and the court ordered arbitration in Australia after determining that the events in dispute had taken place in Australia. *Id.* Defendants argue that, as in *Soundview Shipping*, this Court should construe the Arbitration Agreement to determine the arbitration si-

tus intended by the parties. They suggest that an arbitration agreement, like a contract, requires the Court to face difficult issues of interpretation, which can be resolved by looking to the intent of the parties.

■ Unlike the *Soundview Shipping* agreement, however, the Royalty Agreement makes no express provision as to locale. Moreover, no "implied" provision appears to have been intended. The evidence compels the conclusion that the parties intended to leave the issue open. The only direct evidence that has been submitted by defendants is an affidavit from Donald J. Nairn, the former Chief Legal Officer of BHP and a participant in the drafting of the Agreement. Mr. Nairn states that "it was not the parties' intention to suggest that the place of arbitration would be New York. Rather, the place of arbitration was left by the agreement for the parties or the arbitrator or arbitrators to decide or to be determined if necessary by a court applying appropriate legal standards."[3] Additionally, plaintiff has submitted an affidavit of Paul N. Temple, who apparently had some involvement with the original draft of the Agreement. Mr. Temple agrees that neither New York nor Australia was definitively settled upon as an arbitration site.[4] Thus the direct evidence points to the conclusion that the parties left the site to be determined at the time of arbitration.

Circumstantial evidence suggests the same conclusion. Defendants point to the choice of law provision in the Agreement and argue that because it permits the contract to be governed by either New York or the "law of the place where the said hydrocarbons are produced," the parties similarly intended the place of arbitration to be either New York or Australia, depending upon where the events at issue took place. Such an inference is far too speculative for the Court to rely upon. What the choice of law clause indicates is that the parties came to an agreement concerning rules for

---

**3.** Affidavit of Donald J. Nairn, ¶ 5.

**4.** Affidavit of Paul N. Temple, ¶ 3.

determining choice of law, but did not do so with respect to the place of arbitration.

■ The Court finds, therefore, that it only has discretion to compel arbitration in its own district or in a place specified in the contract. In this case, no place was specified explicitly or implicitly. As a result, the court can only order the parties to proceed to arbitration in this district.

Defendants next argue that the Court should merely stay the action pending termination of the arbitration proceedings and litigation in Australia. The Court could stay the action and not compel arbitration, particularly in light of the fact that all parties are now in agreement that the dispute must be sent to arbitration. *See Couleur Int'l Ltd. v. Saint-Tropez West, supra,* 547 F.Supp. at 178 (because contract designates California as place for arbitration, district court in New York may stay action, but may not compel arbitration). In this case, however, the place of arbitration is not designated in the contract and it is readily apparent that the parties are not in agreement as to the place to proceed. Thus, to stay the action would in all likelihood merely postpone the Court's resolution of the dispute.

Accordingly, the Court grants plaintiff's motion to compel arbitration in New York and grants both parties' motions to stay the action pending the outcome of that arbitration. In light of the fact that Australia appears to be the most logical situs for arbitration, however, the Court will entertain a motion to reconsider its decision to compel arbitration in New York if the arbitrator or arbitrators, once selected, determine that the proceedings would best be conducted in Australia. In the meantime, the complaint is dismissed without prejudice with leave to reopen, if necessary, for reconsideration of the Court's order compelling arbitration in New York or to enforce arbitration.

## CONCLUSION

Plaintiff's motion for an order compelling arbitration in New York is granted. 9 U.S.C. §§ 4, 206.

Plaintiff's and defendants' motions for a stay pending arbitration are granted. 9 U.S.C. § 3.

Defendants' motion for an order compelling arbitration in Australia is denied. 9 U.S.C. §§ 4, 206.

The Clerk of the Court is directed to prepare and enter Judgment dismissing the complaint.

SO ORDERED.

## ON MOTION TO REOPEN

Defendants' motion to reopen is granted. Fed.R.Civ.P. 60(b). Defendants' motion to dismiss on grounds of *forum non conveniens* is granted.

Plaintiff's motion to amend this Court's prior order is denied. Fed.R.Civ.P. 59, 60(b).

## FACTS

The facts and procedural history of this contract action are discussed in this Court's prior opinion, familiarity with which is assumed. *See* Memorandum and Order, 84 Civ. 6620 (JMC) (S.D.N.Y. Mar. 7, 1985) ["March Memorandum and Order"]. The underlying dispute concerns the calculation of royalty payments on hydrocarbons produced by defendant BHP Petroleum Proprietary Limited ["BHP Petroleum"] in the offshore waters of Australia. Plaintiff claims that the royalty payments have been calculated incorrectly to the tune of over $350,000,000.

Both parties previously moved for an order compelling arbitration. Plaintiff requested that the venue of arbitration be in New York; defendants preferred that it be held in Australia. In its March Memorandum and Order the Court ordered that arbitration be held in New York, because under Chapter 2 of the Federal Arbitration Act the Court had no power to order arbitration in Australia. *See id.;* 9 U.S.C. § 201 *et seq.* Defendants had not at that time moved for dismissal on *forum non conveniens* grounds, and the Court declined to "order such a drastic remedy *sua sponte,*

particularly in light of the ongoing dispute concerning the Australian court's jurisdiction over plaintiff." March Memorandum and Order at 4. Since the date of the Court's prior decision, defendants have moved for dismissal on grounds of *forum non conveniens* and the Australian Supreme Court has affirmed the Australian trial court's finding that it has personal jurisdiction over plaintiff. *See BHP Petroleum Pty. Limited v. Oil Basins Limited*, No. 3949 (Austr.S.Ct. June 20, 1985).

Accordingly, the Court finds that the issue is properly before the Court and is ripe for decision. The Court, therefore, grants defendants' motion to reopen for consideration of this issue. Fed.R.Civ.P. 60(b).

### DISCUSSION

■ The Second Circuit has recently held "squarely that district courts have the power to dismiss a petition to compel arbitration on the ground of forum non conveniens." *Maria Victoria Naviera, S.A. v. Cementos del Valle*, 759 F.2d 1027, 1031 (2d Cir.1985). The only restriction on this power is created by a contract expressly designating the forum for arbitration. *Id.* This Court has already held in its March Memorandum and Order that no such designation was made in the parties' contract ["Royalty Agreement"]. March Memorandum and Order at 6–8.

■ Under the doctrine of *forum non conveniens*, the moving party bears the burden of showing that the alternative forum is clearly more convenient and appropriate. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). In deciding whether to dismiss a case, the court may look to "the convenience of the parties, convenience of material witnesses, place where events occurred, access to sources of proof, and plaintiff's choice of forum" *Lovebright Diamond Co. v. Spragins*, 574 F.Supp. 76, 80 (S.D.N.Y.1983). An additional factor is whether the law

governing the substantive issues is that of the instant forum or the alternate forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Generally, the choice of forum will not be disturbed pursuant to this doctrine unless the interests of justice weigh strongly in favor of defendant. *See, e.g., Lovebright Diamond*, 574 F.Supp. at 80; *Leif Hoegh & Co. v. Alpha Motor Ways, Inc.*, 534 F.Supp. 624, 626 (S.D.N.Y.1982); *Troyer v. Karcagi*, 488 F.Supp. 1200, 1207 (S.D.N.Y.1980).

All the factors point to Australia being the proper forum for litigation in this case. The contract at issue was to be performed in Australia. The hydrocarbons are produced there and the royalty payments are calculated and paid to defendant in Australia. Further, the witnesses who will testify as to the manner in which royalties are calculated are all in Australia. Plaintiff has been able to suggest only one witness in America—Paul Temple, who resides in Virginia and was, at best, only tangentially involved in the drafting of the Royalty Agreement. The documentary evidence is also in Australia.

■ Moreover, neither party is domiciled in New York. Plaintiff is a corporation organized under the laws of Bermuda, with its principal place of business in Bermuda. The sole function of plaintiff corporation is to act as trustee for the royalty payments, and its majority shareholder is Weeks Petroleum Limited, a subsidiary of the Australian Bell Group, which operates out of Melbourne. Thus, the majority of the royalties never leave Australia. Both defendants are Australian corporations and have maintained no office in New York since December 1984. As the Supreme Court emphasized in *Piper Aircraft*, the presumption in favor of the plaintiff's choice of forum is less weighty when the plaintiff is a foreign corporation "[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." 454 U.S. at 256, 102 S.Ct. at 266. When neither party is domiciled in

this jurisdiction, the presumption is even less compelling.

The only factor that presents any problem results from the choice of law clause in the Royalty Agreement. That clause provides: "Except as otherwise required by the law of the place where the said hydrocarbons are produced or as otherwise herein provided this Agreement shall be interpreted and applied in accordance with the law of the State of New York."[1] Thus, New York law applies unless Australian law must be applied by virtue of Australia's own laws. If New York law governs the issues in this case, the Court must weigh that factor in determining the appropriate forum.[2] The wording of the choice of law clause makes it necessary for the Court to determine the central issue in the underlying substantive dispute in order to decide which law will apply. *See Overseas Programming Cos. v. Cinematographische Commerzanstalt,* 684 F.2d 232, 235 (2d Cir.1982). The litigation results from differing interpretations and applications of the poorly worded clause governing calculation of royalties:

> Royalty shall be payable in cash unless the Royaltyholder by written notice elects to receive the same in kind in the form of hydrocarbons and the value for purposes of calculating royalty whether payable in cash or in kind shall be the same as that on which royalty to the State is based or if no royalty be payable to the State the value at the place of production as determined by mutual agreement or failing mutual agreement as determined by arbitration as hereinafter provided PROVIDED that the val-

ue shall be the gross value without deduction of any costs amortisation royalty rental or taxes.[3]

Plaintiff claims that the "PROVIDED" clause applies even when there is a royalty paid to the State and, therefore, the royalty payment to plaintiff must be calculated without deduction of any costs, amortization, royalty rental or taxes, whether or not the state royalty is so calculated. Defendants claim that the royalties paid to plaintiff are based upon State royalty calculations, which are calculated before deduction of taxes. The State royalty calculation is necessarily determined in accordance with Australian law and was worked out after negotiations with the Australian "Designated Authority," which is the Minister for Minerals and Energy of Victoria.

■ There appear, therefore, to be two levels to the case: first, whether the "PROVIDED" clause limits the royalty calculation when there is a State royalty payment; and second, whether the State royalty is calculated to exclude the disputed excise tax and other costs. The first issue would seem to be a simple question of contract interpretation, governed by New York law, but primarily presenting questions of fact. It is not clear from the parties' papers that this issue is even in dispute. The second question necessarily involves the interpretation of Australian law, at least in its application. That is, the arbitrators will have to determine whether Australian law requires calculation of State royalties before excluding taxes, and if so, whether the specific royalties at issue were correctly calculated. Accordingly, the Court finds that Australian law will necessarily play a

---

**1.** *See* Royalty Agreement at 4, ¶ 12, Complaint Exh. A, 84 Civ. 6620 (JMC) (filed Aug. 28, 1984) ["Royalty Agreement"].

**2.** Plaintiff argues that the Court should adopt the Fifth Circuit's rule that the other factors in the balancing test may not even be considered if the law of the current forum governs the substantive issues in the case, because that factor is determinative. *See Chiazor v. Transworld Drilling Co.,* 648 F.2d 1015, 1017–18 (5th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). The Second Circuit has not adopted such a rigid ruling, but instead consid-

ers the choice of law as merely a factor to be balanced against others. *See Overseas Programming Cos. v. Cinematographische Commerzanstalt,* 684 F.2d 232 (2d Cir.1982); *Schertenleib v. Traum,* 589 F.2d 1156, 1165 (2d Cir.1978). Accordingly, this Court is not bound by the strict Fifth Circuit rule. In light of the Court's finding that the major issues must be resolved with reference to Australian law, however, the choice of standard is immaterial.

**3.** Royalty Agreement at 1, ¶ 3.

major part in the resolution of the dispute. To the extent that New York law will govern certain issues, those issues will only require the implementation of general principles of contract interpretation, which should not be difficult to prove in a foreign forum. Plaintiff has pointed to no specific areas of New York law that will be at issue.

Accordingly, the Court finds that the balance of interests weigh overwhelmingly on the side of dismissal in favor of the Australian forum. Because the case is hereby dismissed, plaintiff's motion is denied as moot.

## CONCLUSION

Defendants' motion to reopen is granted. Fed.R.Civ.P. 60(b). Defendants' motion to dismiss on grounds of *forum non conveniens* is granted and the March Memorandum and Order is vacated to the extent that it compelled arbitration in New York.

Plaintiff's motion to amend the March Memorandum and Order is denied. Fed.R. Civ.P. 59, 60.

SO ORDERED.