**SOVIET PAN AM TRAVEL EFFORT, Plaintiff,**

v.

**TRAVEL COMMITTEE, INC., World Travel, Inc., f/k/a Travel Destinations Unlimited, Inc., Travel Destinations, Inc., Stanley L. Levin and Ira S. Weiner, Defendants.**

**No. 89 Civ. 2141 (RWS).**

United States District Court, S.D. New York.

Jan. 16, 1991.

Roberts Moelis & Molton, New York City, for plaintiff; Kenneth G. Roberts, Megan Lee, of counsel.

Zeichner Ellman & Krause, New York City, for defendants; David B. Chenkin, Michael L. Slonim, of counsel.

## OPINION

SWEET, District Judge.

Defendants Travel Committee, Inc. ("TCI"), World Travel, Inc. ("WTI"), Travel Destinations, Inc. ("TDI"), Stanley L. Levin ("Levin") and Ira S. Weiner ("Weiner") have moved to dismiss the amended complaint ("the Complaint") of plaintiff Soviet Pan Am Travel Effort ("SPATE") for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, failure to plead fraud with particularity and for vagueness. In the alternative, they seek an order transferring this action to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404. For the following reasons, the motion to dismiss is granted in part with leave to replead. The motion to transfer is denied.

*The Parties*

SPATE is a New York Partnership with its principal place of business at 200 Park Avenue in New York City. This same address serves as the principal place of business of SPATE partner Pan Am Commercial Services, Inc. The other partner, the General Department of International Air Services (Aeroflot Soviet Airlines), operates principally from Moscow. SPATE was formed as a partnership to obtain and distribute preplanned air and land package tours to Russia to wholesale tour operators in the United States.

TCI was a Maryland corporation which had its principal place of business in Maryland. WTI is a Maryland Corporation which had its principal place of business in Maryland. It is the parent and sole share-

holder of TCI. TDI is a Maryland corporation with its principal place of business in Maryland. It is alleged to be a corporate successor to TCI and WTI.

Weiner and Levin are both residents of Maryland. Each owns 50% of the outstanding capital stock of WTI and TDI and each is one of the two officers and directors of each of the corporate defendants.

*Prior Proceedings*

In March 1989, SPATE commenced this action for breach of contract. TCI answered by denying all relevant allegations. On January 26, 1990 SPATE obtained leave to amend its complaint to add claims against TCI's parent, successor and principals. The amended Complaint was served on February 1, 1990. SPATE added five additional claims to its original contract claim as well as four new defendants.

The present motion was filed on April 13, 1990. On July 31, TCI and WTI filed petitions for bankruptcy in Maryland, but those petitions were dismissed by the bankruptcy court on August 8. Argument on the motion was finally heard on August 31, 1990.

*The Facts*

█ The following facts are derived principally from the Complaint. It should be noted that many of the allegations are based on information and belief, without elaboration on the grounds for most of the beliefs. Although the defendants have offered an affidavit from Weiner which contradicts a number of SPATE's assertions, such an affidavit cannot be considered in the context of a motion to dismiss. *See Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985); *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F.Supp. 926, 936 (S.D.N.Y.1989).

On January 15, 1988, SPATE and TCI entered into an agreement under which TCI would promote and sell SPATE's tour packages to the Soviet Union. In the agreement, TCI guaranteed that it would sell at least 80% of the available tours ("the Guaranteed Tourist Volume"). The available tours totalled 10,440, for a Guaranteed Tourist Volume of 8,352. In the event that

TCI failed to sell enough tours, it agreed to pay SPATE $104.10 per passenger for each tour it fell below the Guaranteed Tourist Volume ("the Penalty Payment"). In fact, TCI only sold tours to 1,055 passengers, 7,297 passengers fewer than the Guaranteed Tourist Volume, which would amount to a Penalty Payment of $756,617.70. TCI has refused to pay SPATE any part of this amount. In addition to its claim on the written agreement, SPATE also claims that the parties orally agreed to the same terms in January 1988.

SPATE's claim against WTI asserts that it operated TCI, its wholly-owned subsidiary, in such a fashion as to warrant piercing the corporate veil to reach WTI's assets to satisfy the claim against TCI. SPATE alleges that WTI and TCI were both operated and managed by Levin and Weiner as the sole officers and directors of both corporations and sole shareholders of the parent WTI, that the corporations shared the same office space and commingled their bank accounts, and that WTI "at least partially financed [TCI's] operations, salaries, and expenses." Complaint ¶ 32. SPATE further alleges that Levin and Weiner failed to act as TCI's officers and directors in TCI's best interests, and that both TCI and WTI disregarded corporate formalities by failing to issue stock or keep any kind of corporate records. WTI allegedly undercapitalized TCI, leaving it incapable of meeting normal business expenses. WTI is alleged to have held TCI out as a solvent and independent entity when it was in fact merely a corporate shell, dependent upon its parent for survival. However, the complaint does not specify exactly how WTI did so.

In 1988, allegedly as part of an attempt to frustrate creditors, TDI took over both WTI's and TCI's income, assets and operations, providing similar services to the same or similar clients, operating out of the same premises, employing the same personnel and retaining the same directors. TDI is alleged to be a continuation of World Travel and TCI, both of which ceased normal business operations upon transfer of substantially all of their assets

to TDI. SPATE contends that this conveyance was made for inadequate compensation and that TDI implicitly agreed to assume the liabilities of WTI and TDI.

Finally, SPATE asserts that, not only did Levin and Weiner, acting as officers and directors of WTI, ignore TCI's corporate form, but they also personally ignored both WTI's and TCI's corporate forms, commingling their own funds with those of both corporations and using corporate funds to cover their own personal expenses. SPATE claims that Levin and Weiner controlled and dominated TCI and WTI to such an extent that the corporate entities were merely alter egos and instrumentalities of the two individuals directors, officers and shareholders, who used the corporations to perpetrate a fraud on SPATE.

*Discussion*

1. Personal Jurisdiction

The defendants first seek to dismiss the complaint under Rule 12(b)(2), Fed.R.Civ.P., because the allegations concerning WTI, TDI, Levin and Weiner ("the Added Defendants") are legally insufficient to establish personal jurisdiction over those defendants.

 Personal jurisdiction in a diversity action is determined by the law of the forum state. *Standard Enterprises, Inc. v. Bag–It, Inc.*, 673 F.Supp. 1216, 1218 (S.D.N.Y.1987). Under New York law, an out of state party can be subject to New York jurisdiction if the party is "doing business" in New York, N.Y. C.P.L.R. § 301, or if it falls under New York's long-arm statute, C.P.L.R. § 302. *Id.* While the plaintiff ultimately bears the burden of establishing the existence of jurisdiction over the defendants by a preponderance of the evidence, the burden should not be imposed on the plaintiff at the pleading stage.

The burden of establishing jurisdiction over a defendant by a preponderance of the evidence is upon the plaintiff. Until an evidentiary hearing is held, however, the plaintiff need make only a prima facie showing that jurisdiction exists, and this remains true notwithstanding a controverting presentation by the moving party. In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor.

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985) (citations omitted).

 The defendants claim that none of the Added Defendants ever conducted business in New York so as to be subject to jurisdiction under § 301, and that none of SPATE's allegations is sufficient to support the assertion of long-arm jurisdiction under § 302. However SPATE has adequately alleged personal jurisdiction over TCI and it bases its claim of jurisdiction over the Added Defendants on assertions that they were, in one way or another, controlling persons or affiliates of TCI. As such, they are subject to personal jurisdiction in New York, based not on their own actions but instead on the actions of TCI.

In *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988), the New York Court of Appeals held that long-arm jurisdiction under § 302 existed to reach a Texas corporation and its shareholder based on the activities of an affiliated corporation in New York. The court did not require the plaintiff to show that the Texas defendants had taken any activity in New York, or that there was any kind of formal agency agreement between them and the New York defendant.

[Plaintiff] need only convince the court that [the New York defendant] engaged in purposeful activities in this State in relation to his transaction *for the benefit and with the knowledge and consent of the Texas defendants and that they exercised some control over [the New York defendant] in the matter.*

71 N.Y.2d at 467, 527 N.Y.S.2d at 199, 522 N.E.2d at 44 (emphasis added). Here, SPATE has adequately alleged that TCI's activities in entering into the contract with SPATE were "for the benefit and with the knowledge and consent of" the Added Defendants, and has alleged facts sufficient

to support the claim that they "exercised some control over" TCI in relation to the contract. With respect to TDI, SPATE's allegations support jurisdiction on the theory that TDI ratified TCI's activities after the fact. *See also Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir.1984) (extending long-arm jurisdiction over parent corporation based on New York activities of wholly-owned subsidiary).

## 2. The Choice of Law

■ The choice of which state's law is to be applied in a diversity case is determined by the law of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York choice of law relies on a "paramount interest" test, under which "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining state interest are those which relate to the purpose of the particular law in conflict." *Intercontinental Planning, Ltd. v. Daystrom, Inc.* 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 581 (1969) (quoting *Miller v. Miller*, 22 N.Y.2d 12, 15, 290 N.Y.S.2d 734, 737, 237 N.E.2d 877, 879 (1968)). This analysis must be applied to each cause of action separately to determine which state's law governs that claim. *Lund's Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989).

■ SPATE is correct in its assertion that New York has the greatest interest in enforcing a New York contract, but this only implies that New York law will govern the first two claims of the Complaint, those against TCI for breach of a written and oral contract. Under the paramount interest test, however, the remaining claims will be decided under Maryland law.

■ The third and sixth claims seek to pierce the corporate veils of both TCI and WTI. Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away. *See Mikropul Corp. v. Desimone & Chaplin–Airtech, Inc.*, 599 F.Supp. 940, 942 (S.D.N.Y. 1984) (state of incorporation "has a paramount interest in preserving the corporate form under [its] law by regulating the standards which control piercing the veil of [that state's] corporations"). Likewise, both the fourth claim, for successor liability against TDI, which also involves questions of corporate liability for the acts of others, and the fifth, for fraudulent conveyance of TCI's assets, are of greater interest to Maryland, the state of incorporation and residence of the defendants, than they are to New York. The mere fact that personal jurisdiction exists over the Added Defendants as a result of TCI's New York activities simply does not justify evaluating those defendants' Maryland activities under New York substantive law.

## 3. The Motion to Dismiss

Although the defendants at various places mention dismissal of the entire Complaint, they have presented no argument in support of dismissing the two contract claims against TCI, so those claims are unaffected by this motion.

### a. *The corporate veil claims*

■ According to the defendants, both of SPATE's claims for piercing the corporate veil should be dismissed because they fail to state a claim under Maryland law. Maryland courts have consistently held that the corporate form will not be disregarded to allow a plaintiff to collect from a shareholder except when such treatment is necessary "to prevent fraud or enforce a paramount equity." *Starfish Condominium Assn. v. Yorkridge Service Corp.*, 295 Md. 693, 714, 458 A.2d 805, 816 (1983) (quoting *Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.*, 275 Md. 295, 310, 340 A.2d 225, 234 (1975)). Contending that SPATE has attempted to base its corporate veil claims on allegations of fraud, the defendants assert that the claims must be dismissed because the fraud allegations are insufficiently particular to withstand scrutiny under Rule 9(b), Fed.R.Civ.P.

However, this approach misconstrues the Maryland test set forth in *Starfish Condo.* The test requires fraud *or* "a paramount equity." Thus in *Starfish Condo* the court rejected the plaintiff's attempts to pierce the corporate veil with the following comment:

> The fundamental difficulty with the trial court's analysis of the liability of [the shareholder] is that there is no finding of fraud *nor is there identification of an equity which requires enforcement, and which is paramount to the ordinary expectation of limited liability on the part of the shareholder.*

295 Md. at 714, 458 A.2d at 816 (emphasis added). Thus even if SPATE has not satisfactorily alleged fraud on the part of the defendants, it may still have stated a proper claim for equitable relief. Moreover, because the determination of what constitutes a "paramount equity" is best left for the trier of fact at a trial on the merits, summary disposition of the corporate veil claim is not warranted. *See David v. Glemby Co.*, 717 F.Supp. 162, 165–66 (S.D. N.Y.1989) (corporate veil claim under New York law "rests on factual inquiry; as a result 'the issue of corporate disregard is generally submitted to the jury.' ") (quoting *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988)).

However, although SPATE has stated a claim for equitable relief sufficient to withstand dismissal, its fraud allegations fall short of Rule 9(b)'s requirements. As the Second Circuit has noted,

> Rule 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits. Further, *Rule 9(b) pleadings cannot be based upon information and belief.* There is a recognized exception to this rule, however, that fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a state-

ment of the facts upon which the belief is based.

*DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (citations omitted; emphasis added). Under Maryland law,

> [a plaintiff asserting a claim of fraud must] provide clear and convincing proof of each of the following five elements: (1) a material representation of a party was false, (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth as to impute knowledge to him, (3) the misrepresentation was made with the purpose to defraud (scienter), (4) the person justifiably relied on the misrepresentation, and (5) the person suffered damage directly resulting from the misrepresentation.

*Colandrea v. Colandrea*, 42 Md.App. 421, 428, 401 A.2d 480, 484 (1979) (extending liability for corporation's default on promissory note to sole shareholder of corporation). SPATE's cursory assertion that the defendants "perpetrated a fraud on" it is not sufficiently detailed to allow defendants to prepare their defense. In addition, the allegations are based on information and belief in direct violation of *DiVittorio*, with no explanation of how they are based on facts "peculiarly within the opposing party's knowledge" and without the required "statement of the facts upon which the belief is based." *DiVittorio, supra*, 822 F.2d at 1247.

Therefore, the fraud allegations of the third and sixth claims of the Complaint are dismissed. If SPATE intends to base its corporate veil claims on the fraudulent conduct of the defendants, it is directed to replead such allegations in conformity with the requirements of Rule 9(b).

### b. *The claim for successor liability*

The defendants attack the fourth claim of the Complaint, for recovery against TDI as the successor of WTI and TCI, principally on the grounds that because SPATE's third claim fails to state a claim against WTI, TDI cannot be held

liable as WTI's successor. However, SPATE also asserts a claim against TDI as a successor to TCI in addition to WTI. Under Maryland law this would be sufficient to hold TDI liable for TCI's breach of the SPATE contract. *See Baltimore Luggage Co. v. Holtzman*, 80 Md.App. 282, 562 A.2d 1286 (1989) ("mere continuation" exception to general rule of nonliability of successor corporation allows recovery whenever successor is substantially same as predecessor; if corporation goes through mere change in form without significant change in substance, it should not be allowed to escape liability); *Smith v. Navistar International Transportation Corp.*, 737 F.Supp. 1446, 1448–49 (D.Md. 1988); *see also Colandrea, supra*, 42 Md. App. at 435–36, 401 A.2d at 488–89 (rejecting "continuation" theory but holding successor liable on predecessor's promissory note, based on successor's participation in shareholder's fraudulent evasion of obligation).

### c. *The claim for fraudulent conveyance*

▇▇▇ SPATE's claim for fraudulent conveyance actually amounts to four separate claims under four different sections of the Maryland Uniform Fraudulent Conveyance Act, Md.Comm.Law Code Ann. §§ 15–204 to 15–207 (1975).[1] Despite the name, only two of these four claims actually include fraud as an element, namely the claim that WTI and TCI conveyed their assets to TDI knowing that they would incur debts which they would be unable to pay (Complaint ¶ 49(c)) and that they did so with the intent to delay, hinder and defraud their present or future creditors (¶ 49(d)). Md.Comm.Law §§ 15–206, 15–207. Concerning these claims, while much of the information relating to the transactions among the corporate defendants here is peculiarly within the defendants' control, SPATE has failed to identify a single fact upon which it bases its belief that a fraudulent conveyance occurred. *DiVittorio* therefore mandates that these claims also be dismissed with leave to replead, as SPATE's allegations, do not provide the specificity demanded by Rule 9(b). The remaining two claims—in ¶¶ 49(a) and 49(b) —are not subject to Rule 9(b) as neither requires any showing of fraud by the defendants. Md.Comm.Law §§ 15–204, 15–205.

### 4. The Motion for Transfer of Venue

▇▇▇ 28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Venue in this case would be proper in both the Southern District of New York, where the claim arose, and in Maryland where all defendants reside or are incorporated.

"The plaintiff's choice of forum will not be disturbed . . . unless the balance of convenience and justice has been shown to

---

1. § 15–204. *Conveyance by Insolvent.*
Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors *without regard to his actual intent*, if the conveyance is made or the obligation is incurred without a fair consideration.
§ 15–205. *Conveyance by Person in Business.* Every conveyance made without fair consideration when the person who makes it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and other persons who become creditors during the continuance of the business or transaction *without regard to his actual intent.*
§ 15–206. *Conveyance by a Person About to Incur Debts.*
Every conveyance made and every obligation incurred without fair consideration when the person who makes the conveyance or who enters into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.
§ 15–207. *Conveyance Made With Intent to Defraud.*
Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors.
(emphasis added).

weigh heavily in favor of the defendant." *Zorn v. Anderson*, 263 F.Supp. 745, 749 (S.D.N.Y.1966). Many factors may be considered in evaluating whether to transfer an action, including the convenience of the parties and material witnesses, where the relevant events occurred and the ease of access to the evidence. *Lovebright Diamond Co. Inc. v. Spragins*, 574 F.Supp. 76, 80–81 (S.D.N.Y.1983).

It is true, as defendants assert, that SPATE has somewhat changed the complexion of this case by amending the Complaint to assert claims against the Added Defendants. However, since the case has proceeded this far in this district, the addition of these defendants is insufficient to tip the scales in favor of transfer. Few, if any, additional witnesses will be required, since the individual defendants who have now been named were already actively involved in this litigation. The defendants have not shown that the production of evidence in this forum will be unduly burdensome. Because the circumstances have not changed dramatically, the motion for transfer is denied. *See Zangiacomi v. Saunders*, 714 F.Supp. 658 (S.D.N.Y.1989) (change of venue denied where defendant failed to provide clear and convincing evidence that balance of convenience weighed in favor of transfer).

*Conclusion*

For the foregoing reasons, the defendants' motion is denied except to the extent that the fraud allegations of the third, fifth and sixth claims of the Complaint are dismissed with leave to replead. The motion to transfer this action to the District of Maryland is denied.

It is so ordered.