**UNITED FEATURE SYNDICATE, INC., and Newspaper Enterprise Association, Inc., Plaintiffs,**

v.

**MILLER FEATURES SYNDICATE, INC., Richard Vroom, and Agnes Vroom, Defendants.**

**No. 01 CIV. 2491(GEL).**

United States District Court, S.D. New York.

March 11, 2002.

Jordan Berns, Baker & Hostetler LLP, Cleveland, OH (Paul P. Eyre and Nichol M. Schoenfield, Baker & Hostetler LLP, Cleveland, OH, and William Lee Kinnally, Jr., Gibney, Anthony & Flaherty, LLP, New York City) for Plaintiffs.

Neal A. DeYoung, New York City, for Defendants.

### OPINION AND ORDER

LYNCH, District Judge.

Plaintiffs United Feature Syndicate, Inc. ("UFS") and Newspaper Enterprise Asso-

ciation, Inc. ("NEA")—together doing business as "United Media"—bring this diversity action alleging conversion of funds they claim to have been held in trust by defendant Miller Features, Inc. ("Miller Features") and two of its officers, defendants Richard Vroom and Agnes Vroom (together, "the Vrooms"). Miller Features is now in bankruptcy proceedings in Canada, and as a result, United Media has voluntarily discontinued the action against that defendant pursuant to Fed.R.Civ.P. 41(a)(1). However, United Media has not discontinued the action against the Vrooms, who move to dismiss pursuant to Fed.R.Civ.P. 12(b) on a variety of procedural and substantive grounds. For the reasons that follow, the Vrooms' motion to dismiss will be granted in part and denied in part.

## BACKGROUND

For purposes of this motion to dismiss, the facts must be taken as pleaded by the plaintiffs. United Media—which is comprised of UFS, a New York corporation with principal place of business in New York, and NEA, a Delaware corporation with principal place of business in New York—is in the business of syndicating newspaper features, including a number of popular comic strips for which it holds registered U.S. copyrights. (Amend. Compl.¶¶ 1–2, 9.) For approximately 100 years, United Media has licensed the rights to publish its features to Canadian newspapers, either directly or through agents that market United Media's features on its behalf. Miller Features, an Ontario corporation with its principal place of business in Toronto, is one such marketing agent. (Amend.Compl.¶¶ 3, 10–11.) Miller Features was founded and operated by the Vrooms, both of whom are citizens of Canada and residents of Toronto. (Amend.Compl.¶¶ 4–5.) The Canadian company initially agreed, orally, to serve as United Media's agent at some point in 1996; the parties later memorialized the terms of that oral agreement in a written Agency Agreement, dated July 8, 1998 (the "Written Agency Agreement"), that formally appointed Miller Features to serve as United Media's agent. Under the terms of the Written Agency Agreement, Miller Features agreed to promote United Media's features in Canada; to service the agreements between United Media and its Canadian clients by "collecting, disbursing, and accounting for payments made by Clients for the benefit of [United Media] ... and assuring that all Clients make such payments in a timely fashion", and to negotiate future agreements with prospective Canadian clients. (Amend. Compl.¶¶ 12–13.)

The agreement obligated Miller Features to use all reasonable efforts to collect amounts owed to United Media by Canadian clients within 60 days after the end of the calendar month in which those amounts were due and to provide United Media with a monthly accounting of all amounts invoiced from United Media's Canadian clients and payable to United Media for that particular month. In consideration for providing these and other services as United Media's agent, Miller Features was paid a percentage-based commission on all amounts paid to United Media by its Canadian clients. The net amounts owed to United Media after deduction of these commissions were to be paid when the monthly accounting report was submitted. (Amend.Compl.¶¶ 14–17.) United Media had the right to terminate the agreement by written notice in the event of any breach, and the effect of that termination was to render all amounts owed to United Media immediately due and payable. (Amend.Compl.¶ 18.) Choice of law and forum selection provisions in the agreement provide that New York law governs and that the federal and state courts within this District are the

exclusive fora for dispute resolution. (Amend. Compl Exh. B. ¶ 10.)

In addition to negotiating the agency agreements in New York, the Vrooms had numerous and repeated contacts with New York in connection with the agency relationship between United Media and Miller Features, attending numerous quarterly sales meetings at United Media's New York offices, communicating regularly with United Media by telephone and mail, and transmitting monthly accounting reports and funds collected from United Media's Canadian clients. (Decl. of Lisa Marie Wilson, July 16, 2001, at ¶¶ 5–14 & Exh. 1–2, 4–7, 9. ("Wilson Decl.")) While the Written Agency Agreement expired by its terms on December 31, 1999, Miller Features continued to perform its services as United Media's agent in accordance with the expired agreement's terms throughout the year 2000. (Amend.Compl.¶ 20.) In November 2000, however, United Media became aware that Miller Features had fallen into arrears in its payments to United Media. The parties spent a few months attempting to negotiate a mutually acceptable repayment plan; as part of those negotiations, the Vrooms came to New York for a meeting with United Media in January 2001. (Amend.Compl.¶ 22.) When these negotiations failed to resolve matters, United Media gave formal notice, in a letter sent to Miller Features on February 13, 2001, that it was terminating the Agency Agreement and advised Miller Features that United Media was owed approximately $248,043. (Amend. Compl.¶ 23.) United Media requested immediate access, as provided for in Section 4(f) of the Agency Agreement, to all information pertaining to its Canadian client relationships—including the contact information for each client, a list of the specific features to which each client subscribed, and the rate and delivery fees for each feature. Since much of this information had been collected and maintained exclusively by Miller Features, United Media was unable to service its clients effectively upon termination of the agreement—indeed, in some instances, United Media was not even able to identify its Canadian clients. While United Media followed up its initial request in subsequent letters and telephone calls, the Defendants did not provide any of these records to United Media upon its request and, apparently, still have not done so. (Amend. Compl.¶¶ 23–27.)

United Media also instructed Miller Features permanently to cease all of its dealings with United Media's Canadian clients, in accordance with Section 9(a) of the Agency Agreement. However, Agnes Vroom continued to contact United Media's Canadian clients after February 13, 2001, and instructed them to continue paying Miller Features for United Media's features. These communications apparently continued throughout March 2001 in spite of United Media's repeated requests for Miller Features and the Vrooms to cease, resulting in some confusion on the part of some of United Media's Canadian clients. (Amend.Compl.¶¶ 23, 28–36.) Miller Features also continued to represent that it was serving as United Media's agent on its internet web site until April 2001, when the web site was shut down altogether. (Amend.Compl.¶¶ 37–39.)

Miller Features filed for bankruptcy in Canada on March 13, 2001. (Amend. Compl.¶ 10.) United Media initiated this action and moved for a preliminary injunction against Miller Features and the Vrooms on March 30, 2001, and filed an Amended Complaint on April 16, 2001. Pending a hearing on United Media's motion for the preliminary injunction, the Court restrained the defendants from contacting United Media's Canadian clients or engaging in certain conduct suggesting that Miller Features continued to be an

agent of United Media or had any right to market United Media features. The Court vacated that restraining order following a hearing held on May 22, 2001, and shortly thereafter United Media voluntarily discontinued the action against Miller Features. United Media did not discontinue the action against the Vrooms or file another amended complaint.

Counts Two, Five, Six, Seven, and Nine of the Amended Complaint—which respectively allege breach of fiduciary duty, unjust enrichment, conversion, fraudulent conveyance, and federal copyright infringement—were originally asserted against all three defendants, and so remain pending against the Vrooms. (Amend. Compl.¶¶ 43–47, 60–68, 74–78.) While Counts One, Three, and Four—which respectively allege breach of contract, entitlement to an accounting, and entitlement to the imposition of a constructive trust—are nominally asserted against Miller Features alone, United Media asserts in Count Eight that it should be permitted to lift the corporate veil and hold the Vrooms, as officers or shareholders of Miller Features, liable in their individual capacities for any wrongdoing by the corporation. (Amend. Compl.¶¶ 48–59, 69–73.) Counts One, Three, and Four therefore remain before the Court, through the veil-piercing claim asserted in Count Eight, as claims asserted directly against the Vrooms.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 12(b), the Vrooms now move to dismiss this action on a variety of procedural grounds—lack of personal jurisdiction, *forum non conveniens,* international comity—and for failure to state a claim upon which relief may be granted.

## I. Personal Jurisdiction

In order to defeat the Vrooms' jurisdiction-testing motion at this stage of the litigation, United Media need only make a prima facie showing of jurisdiction based on the factual allegations in its complaint and supporting affidavits. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990); *Kronisch v. United States,* 150 F.3d 112, 130–31 (2d Cir.1998). Personal jurisdiction over a non-resident defendant typically is governed by the law of the state in which a federal court sits. *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997).

United Media maintains that the Court properly may exercise personal jurisdiction over the Vrooms, both of whom are citizens and domiciliaries of Ontario, under Rule 302(a)(1) of the New York Civil Practice Law and Rules, which confers long-arm jurisdiction over a non-domiciliary defendant if two conditions are satisfied. First, the non-domiciliary defendant must "transact[ ] . . . business within the state," either in person or through an agent. C.P.L.R. 302(a)(1). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York." *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). A non-domiciliary defendant "transacts business" under C.P.L.R. 302(a)(1) when it "purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967). Whether the defendant "transacts business" in New York is determined with reference to a variety of factors, including:

(i) whether the defendant has an ongoing contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to

the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996) (citations omitted); *see also Cut-Co Industries, Inc. v. Naughton,* 806 F.2d 361, 368 (2d Cir.1986) (considering, as relevant contacts for jurisdictional purposes, defendant's "extensive communication" by telephone with plaintiff's New York office and his forwarding of royalties, fees, and financial information to that office). No one factor is dispositive; other factors may be considered, and the "ultimate determination is based on the totality of the circumstances." *Agency Rent A Car Sys.,* 98 F.3d at 29.

Second, the claim against the non-domiciliary must arise from that business activity. C.P.L.R. 302(a)(1). The parties quibble over the precise language that describes this standard, with the Vrooms asserting that United Media must demonstrate a "substantial nexus" between the transaction of business and the cause of action and United Media maintaining that this nexus need only be "articulable." Each side can find support for its chosen phrase in New York case law; indeed, the New York Court of Appeals appears to use the terms interchangeably. *Compare McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981) (stating that C.P.L.R. 302(a)(1) requires "some articulable nexus between the business transacted and the cause of action sued upon"), *with id.* (series of visits to New York cannot form predicate for exercise of personal jurisdiction because "they have not been shown to bear a substantial relationship to the transaction out of which the instant cause of action arose").

Here, the factual allegations in the Amended Complaint clearly reveal a sufficient nexus—be it labeled "articulable" or "substantial"—between business transacted in New York by the Vrooms and the claims asserted by United Media to justify the exercise of long-arm jurisdiction over the Vrooms. Between 1995 and 2001, the Vrooms had extensive contact with New York in connection with the negotiation and performance of the agency agreements between Miller Features and United Media. Both the initial oral agreement and subsequent Written Agency Agreement were negotiated by Richard Vroom in New York on Miller Features' behalf, and those negotiations by themselves might constitute sufficient contacts to justify the exercise of personal jurisdiction. *See, e.g., Cross & Cross Properties Ltd. v. Everett Allied Co.,* 664 F.Supp. 713, 716 (S.D.N.Y.1987) (factual allegations that defendant was "physically present in New York for negotiation of and agreement in principle to the contracts out of which the cause of action arose ... present very nearly the 'clearest sort of case' for long-arm jurisdiction under New York law" (citation omitted)).

But the Vrooms' contacts with New York in connection with the agency relationship between Miller Features and United Media extend well beyond mere negotiation of those agreements. As part of that ongoing contractual relationship, the Vrooms regularly communicated with United Media in New York by telephone, facsimile, and regular mail. At the end of almost every month, they sent accounting reports and hundreds of thousands of dollars to United Media in New York. The Vrooms also made periodic visits to New York to attend quarterly sales meetings at United Media's offices; indeed, the Written Agency Agreement explicitly contemplates the attendance of Miller Features representatives at those New York sales

meetings by providing for the reimbursement of expenses incurred by Miller Features when attending those meetings. Wilson Decl. ¶ 10 & n. 2.

These purposeful, periodic contacts with New York—taking many different forms over a period of years—clearly constitute "transact[ion of] business" in New York within the meaning of C.P.L.R. 302(a)(1). While Richard Vroom protests that his contacts with New York took place solely in his capacity as an officer of Miller Features, C.P.L.R. 302(a)(1) does not "accord any special treatment to fiduciaries acting on behalf of a corporation or . . . insulate them from long-arm jurisdiction for acts performed in a corporate capacity." *Kreutter,* 71 N.Y.2d at 470, 527 N.Y.S.2d 195, 522 N.E.2d 40. Nor do the Vrooms fare any better by arguing that none of the acts supporting United Media's various tort claims took place in New York. While it is true that the conditions for long-arm jurisdiction must be satisfied for each cause of action asserted, *e.g., Anderson v. Indiana Black Expo, Inc.,* 81 F.Supp.2d 494, 501 (S.D.N.Y.2000), United Media is not precluded from asserting its various tort claims simply by virtue of the fact that the Vrooms' various contacts with New York revolve around a contractual relationship. "The requirement [under C.P.L.R. 301(a)(2) ] that the claim arise under the contract . . . does not mean that the cause of action must be for breach of contract." *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.,* 782 F.Supp. 763, 768 (S.D.N.Y.1991). Claims sounding in tort may properly "arise from" the transaction of business in New York, even when the acts underlying the cause of action took place outside of New York, as long as they are sufficiently related to that transaction of business. *See Stewart v. Adidas A.G.,* No. 96 Civ. 6670(DLC), 1997 WL 218431, *5 (S.D.N.Y. Apr. 30, 1997); *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1531 n. 9 (S.D.N.Y.1985).

And since all of United Media's claims concern the Vrooms' conduct towards United Media and its Canadian clients, the Vrooms' transaction of business in New York is sufficiently related to the claims asserted to justify the exercise of personal jurisdiction.

## II. *Forum Non Conveniens*

■ The Vrooms also maintain that the action should be dismissed on the ground of *forum non conveniens,* arguing that since most of the relevant documents and witnesses are in Canada, and none of the alleged acts of wrongdoing took place in New York, United Media's claims should instead be presented to a Canadian court, be it the Toronto bankruptcy court before which the Miller Features bankruptcy proceeding is pending or some other Canadian forum.

When reviewing a motion to dismiss for *forum non conveniens,* we must "begin with the assumption that the plaintiff's choice of forum will stand." *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 71 (2d Cir.2001) (en banc), *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("[U]nless the balance [of conveniences] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Even greater deference is afforded to the plaintiff's choice when, as in this case, the plaintiff has sued in its home forum. *Iragorri,* 274 F.3d at 71; *see Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient."); *Koster v.(Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) ("In any balance of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown."). The existence of a forum selection clause

also counsels strongly against dismissal of an action based on *forum non conveniens*. *Firemen's Ins. Co. of Newark, New Jersey v. Keating*, 753 F.Supp. 1137, 1145 (S.D.N.Y.1990).

Given these strong presumptions in favor of United Media's choice of its home forum, the Vrooms labor under a particularly heavy burden when arguing for dismissal based on *forum non conveniens*. Since United Media readily concedes that an adequate, alternative forum is available in Canada, Pl. Brief in Opp. at 16, we proceed to evaluate the Vrooms' argument for dismissal under the familiar framework of private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) issues concerning the enforceability of a judgment; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive—or the opposite. *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 294 (2d Cir.1996). Public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having a trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 293. In light of the various presumptions weighing in United Media's fa-

vor, dismissal based on *forum non conveniens* is justified only if the balance of these public and private interest factors weighs heavily in favor of the Vrooms' alternative forum. *See Koster*, 330 U.S. at 524, 67 S.Ct. 828 (in order to disturb plaintiff's choice of its home forum, defendant must make "clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems"); *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1344 (2d Cir.1972) (Friendly, J.) ("[C]ourts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country.").

Here, the Vrooms fall well short of establishing that United Media's choice of this forum will cause "such oppressiveness and vexation ... as to be out of all proportion to [United Media's] convenience." *Id.* The private interest factors are more or less neutral. The Vrooms assert that all of the relevant documents and witnesses, including Miller Features' clients and several of its employees, are located in Canada, and that these Canadian witnesses "would be prevented by the expense and travel from testifying at the trial." Vroom Reply Aff.¶ 3. However, the burdens asserted by the Vrooms of litigating in New York, rather than Toronto, are not exceptional.[1] Nor, for that matter, are those

---

1. *Cf. In re Toga Mfg. Ltd.*, 28 B.R. 165, 168 (Bankr.E.D.Mich.1983) (taking "judicial notice of the close geographic proximity of Canada and the United States" and concluding that creditor "would suffer no inconvenience

if it were forced to litigate its claim in Canada"). Indeed, litigating in this District may well be *less* burdensome to the Vrooms than litigating in certain locations *within* Canada,

asserted burdens unique to the Vrooms. While the Vrooms assert that "all" relevant documents and witnesses are located in Canada, United Media contends otherwise, and were this case instead to go forward in a Canadian court, United Media almost certainly would face a reciprocal burden of transporting to Canada documents and witnesses that support its version of the facts. *See Byrne v. British Broadcasting Corp.*, 132 F.Supp.2d 229, 238 (S.D.N.Y.2001) (relative costs of obtaining attendance of witnesses is neutral factor where "[t]here has been no showing that [such costs] would be significantly greater for either side in either forum"). The existence of the forum selection clause in the Written Agency Agreement makes clear that the parties themselves agreed that litigation in this forum would be mutually acceptable and convenient, and the Vrooms have failed to demonstrate that the testimony of any critical witness would be unavailable if this action proceeds before this Court. *See ESI, Inc. v. The Coastal Corp.*, 61 F.Supp.2d 35, 65 (S.D.N.Y.1999). Finally, the Vrooms do not suggest that a judgment of this Court would be unenforceable in Canada.

The public interest factors also weigh against dismissal. "Court congestion" is not a factor weighing in the Vrooms' favor. While the Vrooms assert that Ontario offers an "expedited judicial process" to resolve disputes such as this one, Cooperman Aff. ¶ 8, they offer no evidence indicating how expeditious that process actually is relative to the process available here. Absent any such evidence, there is little basis to conclude that the courts of the Southern District of New York suffer from any more congestion than the courts of Ontario. *See DiRienzo v. Philip Services Corp.*, 232 F.3d 49, 63 (2d Cir.2000) (noting that "Ontario courts, like the Southern District of New York, suffer from congestion," and finding this factor to be neutral), *petition for reh'g en banc filed*, Nos. 99–7825, 99–7776 (2d Cir. Nov. 22, 2000); *Ingram Micro, Inc. v. Airoute Cargo Express, Inc.*, No. 99 Civ. 12480(SAS), 2001 WL 282696, at *5 (S.D.N.Y. Mar. 22, 2001) (finding relative court congestion to be neutral factor where defendant "offered no evidence that [Ontario courts are] any less busy" than courts of the Southern District of New York).[2]

Moreover, since the harms that United Media claims to have suffered at the hands of the Vrooms, including infringement of its copyrights, were experienced in New York, those harms are "of local interest to the United States and an American jury has an interest in evaluating [those] harm[s]." *Ingram Micro, Inc.*, 2001 WL 282696, at *16; *see also World Film Servs., Inc. v. RAI Radiotelevisione Italiana S.p.A.*, No. 97 Civ. 8627(LMM), 1999 WL 47206, at *9 ("It is well-settled that the United States has an interest in protecting the intellectual property rights of its citizens."). Finally, ensuring that the forum is familiar with the applicable law and avoiding unnecessary problems involv-

such as British Columbia or the Northwest Territories.

**2.** Nor may the Vrooms rely on the Miller Features bankruptcy proceeding pending in Toronto to establish the relative administrative advantages of proceeding with the instant claims in Ontario, since the existence of related litigation—while "of major significance" when considering requests to transfer cases among the federal courts under 28 U.S.C.

§ 1404(a)—is not a factor to be considered under *Gilbert. Guidi v. Inter–Continental Hotels Corp.*, 224 F.3d 142, 148 (2d Cir.2000); *see DiRienzo v. Philip Services Corp.*, 232 F.3d 49, 63 (2d Cir.2000). In any event, as discussed in Part III, *infra*, with respect to the Vrooms' comity-based arguments, most of the remaining claims advanced by United Media in this action do not present any direct conflict with the claims to be adjudicated in the Canadian bankruptcy proceeding.

ing conflicts of law also are neutral factors, at best. United Media maintains that New York law, with which this Court is intimately familiar, governs all of its claims, and even if that argument is mistaken, the Vrooms have failed to demonstrate that application of Canadian law would be unusually difficult or burdensome to this Court. *See Manu Int'l, S.A. v. Avon Prods., Inc.,* 641 F.2d 62, 67 (2d Cir.1981) ("[T]he need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens, and we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." (internal quotation marks and citation omitted)); *World Film,* 1999 WL 47206, at *8.

Having failed to provide any evidence of "unusually extreme circumstances," *Leasco Data Processing Equipment Corp.,* 468 F.2d at 1344, and having failed to come anywhere close to establishing that litigation of these disputes in New York will cause "such oppressiveness and vexation to a defendant as to be out of all proportion" to United Media's convenience, *Koster,* 330 U.S. at 524, 67 S.Ct. 828, the Vrooms' motion to dismiss on the ground of *forum non conveniens* is denied.

## III. Comity–Based Abstention and Failure to State a Claim

Finally, the Vrooms urge the Court to dismiss this action either based on what they refer to as the "doctrine of international comity" or for failure to state a claim upon which relief may be granted, and since these issues are somewhat intertwined, the Court analyzes them together. The standard under Fed.R.Civ.P. 12(b)(6) for granting a motion to dismiss for failure to state a claim is familiar enough—the Court must accept "as true the facts alleged in the complaint," *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas v. City of New York,* 143 F.3d 31, 36 (2d Cir.1998) (internal citations omitted); *see also Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (when adjudicating motion to dismiss under Fed.R.Civ.P. 12(b)(6), the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" (internal quotation marks and citations omitted)). Understanding precisely what the Vrooms mean to argue with respect to "comity," however, requires a bit of doctrinal excavation.

### A. *Abstention Based on International Comity*

"Comity" embraces "a rather nebulous set of principles that may be applicable whenever a court's decision will have ramifications beyond its territorial jurisdiction and into that of another nation." *Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1519 n. 10 (11th Cir.1994); *see also Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984) (describing comity as "a complex and elusive concept"); Michael D. Ramsey, *Escaping "International Comity",* 83 Iowa L.Rev. 893, 893 (1998) (describing comity as "an expression of unexplained authority, imprecise meaning, and uncertain application," whose "use confuses inquiries that ought to be clear and distinct, and submerges issues that should be carefully and forthrightly considered"). The concept of international comity "counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *United States v. Nippon Paper Industries Co., Ltd.,* 109 F.3d 1, 8 (1st Cir.1997); *see*

*Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (describing comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws"); *Laker Airways, Ltd.,* 731 F.2d at 937 (describing comity as "the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum"). While comity most often is discussed and applied when considering whether foreign judgments and orders are entitled to recognition and enforcement in the United States, *see, e.g., Hilton,* 159 U.S. at 164, 16 S.Ct. 139; or whether U.S. statutes should be applied extraterritorially in the face of potential conflicts with the laws of other countries, *see, e.g., Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 817–18, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (Scalia, J., dissenting) (discussing concept of "prescriptive comity," or "comity of nations," which refers to "the respect sovereign nations afford each other by limiting the [territorial] reach of their laws"), the "principle expressed is one of broad application." *In re Maxwell Communication Corp. plc,* 93 F.3d 1036, 1046 (2d Cir.1996).

■ When the Vrooms invoke the notion of "international comity" in this case, they are not primarily concerned with the recognition and enforcement of foreign judgments or the conflicts of law that might result from extraterritorial application of U.S. law. Rather, they mean to invoke the principles that guide district courts when deciding whether to abstain from exercising jurisdiction out of deference to parallel proceedings pending in other countries—what Justice Scalia has termed the "comity of courts." *Hartford Fire Ins. Co.,* 509 U.S. at 817–18 n. 9, 113 S.Ct. 2891 (Scalia, J., dissenting) (distin-

guishing "prescriptive comity" from "comity of courts," and defining latter to refer to the principles "whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere"). As a general matter, "concurrent jurisdiction in two courts does not necessarily result in a conflict." *China Trade & Development Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987). To the contrary, federal courts normally labor under a "strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), and as a result, " 'parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.' " *China Trade & Development Corp.,* 837 F.2d at 36 (quoting *Laker Airways Ltd.,* 731 F.2d at 926–27).

Notwithstanding this "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), federal courts have the inherent, discretionary power to abstain from exercising that jurisdiction in order to extend comity to related proceedings pending in other countries. *See, e.g., Bigio v. Coca–Cola Co.,* 239 F.3d 440, 454 (2d Cir.2000) (international comity "may . . . take the form of 'a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state' " (quoting *In re Maxwell Communication Corp.,* 93 F.3d at 1047)); *Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1518 (11th Cir.1994) (noting that in some international disputes, "the prudent and just action is to abstain from the exercise of jurisdiction"); *see also Goldhammer v. Dunkin' Donuts Inc.,* 59 F.Supp.2d 248,

252 (D.Mass.1999); *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F.Supp. 101, 103–04 n. 1 (S.D.N.Y.1997); *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs., Inc.*, 949 F.Supp. 1123 (S.D.N.Y.1997); *Caspian Investments Ltd. v. Vicom Holdings, Ltd.*, 770 F.Supp. 880, 883–84 (S.D.N.Y.1991). In the bankruptcy context, abstaining from exercising jurisdiction on the basis of comity can be particularly appropriate, since "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir.1987); *see also In re Maxwell Communication Corp.*, 93 F.3d at 1041 ("Simultaneous proceedings in different countries, especially in multi-party cases like bankruptcies, can naturally lead to inconsistencies and conflicts."); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457–58 (2d Cir. 1985) ("The extending of comity to a foreign bankruptcy proceeding ... enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion."). As a result, "American courts regularly defer to such actions." *Finanz AG Zurich*, 192 F.3d at 246; *see also Cunard S.S. Co.*, 773 F.2d at 458 ("American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities.").

Indeed, Congress has recognized the special considerations of bankruptcy proceedings by enacting section 304 of the Bankruptcy Code, 11 U.S.C. § 304, which permits a representative of a foreign debtor to file a petition "ancillary to a foreign proceeding" with a U.S. bankruptcy court. A bankruptcy court presented with such a petition is authorized to enjoin any action against "a debtor with respect to property involved in [the] foreign proceeding" or to order any "other appropriate relief." 11 U.S.C. § 304(b)(1)(A), (b)(3). Bankruptcy courts are explicitly instructed by the statute to consider "comity" as a factor when deciding whether to grant relief under § 304(b). 11 U.S.C. § 304(c)(5). The Second Circuit has characterized § 304(b) as a "preferred remedy" for foreign debtors, given the "historic preference which favors bankruptcy adjudications by a judge with experience in bankruptcy law."[3] *Cunard S.S. Co.*, 773 F.2d at 455; *see also RBS Fabrics Ltd. v. G. Beckers & Le Hanne*, 24 B.R. 198, 200 (S.D.N.Y.1982) (ancillary proceeding under § 304 is "preferrable procedure" for determining where creditors' claims should be adjudicated).

Since neither of the Vrooms is a "foreign representative" of the Canadian debtor within the meaning of the Bankruptcy Code, 11 U.S.C. § 101, the Vrooms apparently would not themselves have been able to avail themselves of § 304. However, § 304 provides neither an exclusive remedy for foreign debtors nor an exclusive setting in which comity-based principles may be considered. *See Cunard S.S. Co.*, 773 F.2d at 455–56. The Court therefore may consider whether international comity justifies staying or dismissing the present

---

**3.** The Canadian bankruptcy trustee has not chosen to file an ancillary petition under § 304. The use of § 304 might have avoided the somewhat awkward circumstance presented in this case by the Canadian bankruptcy trustee's affidavit. *See* Cooperman Aff., Pl. Notion of Motion Exh. B. Had he filed an ancillary petition under § 304, the trustee would have been required, through counsel, to take a firm position as to the estate's interest in the fate of this action and any other pending U.S. litigation, rather than casually offering his lay legal opinions—in an affidavit submitted not in behalf of the estate's interests, but in support of the Vrooms' interests in this case—on the effect of Canadian bankruptcy law on United Media's claims.

action—not, as would have been the case under § 304, pursuant to statutory command, but instead pursuant to its inherent authority to abstain from exercising jurisdiction under the federal common law principles governing comity-based abstention. *See Turner Entertainment Co.,* 25 F.3d at 1520 n. 12.

Whether to abstain from a case on the basis of international comity is a matter within the discretion of the district court, and the Vrooms bear the burden of demonstrating that comity-based abstention is appropriate in this case. *Bigio,* 239 F.3d at 454; *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 999 (2d Cir. 1993); *see also Nippon Paper Industries Co.,* 109 F.3d at 8 ("Comity is more an aspiration than a fixed rule, more a matter of grace than of obligation."). When exercising that discretion, the court must be guided by the "overarching concerns" upon which comity-based abstention is founded: "demonstrating a proper level of respect for the acts of other sovereign nations, ensuring fairness to litigants, and efficiently using scarce judicial resources." *Goldhammer,* 59 F.Supp.2d at 253; *Turner Entertainment,* 25 F.3d at 1518. The court may extend comity to parallel international proceedings "only if those proceedings do not violate the laws or public policy of the United States . . . and if 'the foreign court abides by fundamental standards of procedural fairness.'" *Finanz AG Zurich,* 192 F.3d at 246 (citations omitted).

There is no question that bankruptcy proceedings in Canada—a "sister common law jurisdiction with procedures akin to our own"—are entitled to comity under appropriate circumstances. *Clarkson Co., Ltd. v. Shaheen,* 544 F.2d 624, 630 (2d Cir.1976); *see also Cornfeld v. Investors Overseas Servs., Ltd.,* 471 F.Supp. 1255, 1259–61 (S.D.N.Y.1979). United Media does not contend that the Canadian bankruptcy proceeding somehow "violate[s] the laws or public policy of the United States" or that the Canadian bankruptcy court will fail to "abide[ ] by fundamental standards of procedural fairness." *Finanz AG Zurich,* 192 F.3d at 246. However, "[t]he principle of comity has never meant categorical deference to foreign proceedings." *In re Treco,* 240 F.3d 148, 157 (2d Cir. 2001). In order for comity to justify abstention in this case, the Vrooms must demonstrate that deference actually would result in the avoidance of some sort of conflict—in other words, that the exercise of jurisdiction by this Court actually might fail to "demonstrat[e] a proper level of respect for the acts" of the Canadian bankruptcy court. *Goldhammer,* 59 F.Supp.2d at 253. If the claims raised in this action are not also within the purview of the Canadian bankruptcy court, then adjudicating those claims in this Court shows no disrespect to that tribunal, and the Court need not inquire much further. *Cf. Hartford Fire Ins. Co.,* 509 U.S. at 798–99, 113 S.Ct. 2891 (since there is no "true conflict between domestic and foreign law," comity does not counsel against exercising jurisdiction, and the Court "ha[s] no need . . . to address other considerations that might inform a decision to refrain from the exercise of jurisdiction on grounds of international comity").

At least on its face, the complaint in this case does not raise any claims that are *directly* within the ambit of the Canadian bankruptcy proceeding, since United Media has voluntarily discontinued its action against Miller Features and the Vrooms are not formally parties to the Miller Features bankruptcy proceeding. However, the formal absence of the Canadian debtor from this lawsuit does not end the inquiry, for it may nevertheless be the case that one or more of the claims that United Media asserts against the Vrooms sufficiently implicate interests and assets of the

Miller Features bankruptcy estate that adjudication of those claims by this Court, rather than the Canadian bankruptcy court, might interfere with the "equitable and orderly distribution of [the] debtor's property." *Victrix S.S. Co.*, 825 F.2d at 713–14; *cf.* 11 U.S.C. § 304(b)(1)(A)(i) (authorizing bankruptcy court presented with ancillary petition to enjoin any action against "a debtor with respect to property involved in [the] foreign [bankruptcy] proceeding"). For example, if any of the claims raised in the complaint actually belong to the bankruptcy estate, rather than to United Media, then this Court would be justified in deferring adjudication of those claims in favor of the Canadian bankruptcy proceeding.

Such an approach affords the Canadian bankruptcy proceeding roughly the same degree of deference that would be extended to a U.S. bankruptcy court under similar circumstances. If the Miller Features bankruptcy proceeding were pending before a bankruptcy court in this country, rather than in Canada, then this Court would be obliged to examine each of the claims in the complaint to determine whether any of those claims actually were owned by Miller Features and, therefore, were subject to the automatic bankruptcy stay as "property of the estate."[4] *See In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1101 (2d Cir.1990) (because automatic stay provision in Bankruptcy Code, 11 U.S.C. § 362(a), "prevents individual creditors from suing to enforce a right of action belonging to a corporation ... [that] is in bankruptcy," court must determine whether cause of action "is the exclusive property of [the] bankruptcy estate" or instead "belongs to the creditor"). While no statutory provision directly mandates the Court to stay its hand in this case, international comity justifies a similar analysis. If any of United Media's claims against the Vrooms actually belong to Miller Features, and therefore concern property involved in the Canadian bankruptcy proceeding,[5] deferring adjudication in favor of the Canadian bankruptcy court is appropriate with respect to those particular claims. *Cf.* 11 U.S.C. § 304(b)(1)(A)(i).

We therefore must analyze each count of the Amended Complaint to determine whether United Media has stated a valid claim for relief and, if so, whether the claim concerns property involved in the Miller Features bankruptcy estate and, as a result, is potentially subject to comity-based abstention. For each claim, we first must assess whether the complaint sufficiently states a claim upon which relief may be granted under the law governing that particular claim. We then assess whether the particular claim is sufficient to survive the Vrooms' motion to dismiss under Fed.R.Civ.P. 12(b)(6), and if so, whether the claim concerns property involved in the Miller Features bankruptcy estate and

4. Under federal bankruptcy law, "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), including causes of action that belong to the debtor. Whether a right to sue belongs to the debtor or to individual creditors is determined by applicable non-bankruptcy law, which usually is state law. *In re Mediators*, 105 F.3d 822, 825 (2d Cir.1997); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir.1989); *In re Albion Disposal, Inc.*, 217 B.R. 394, 402 (W.D.N.Y.1997); *see also Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

5. *See* Bankruptcy and Insolvency Act, R.S.C. 1985, .c. B–3, §§ 2(1), 67(1)(c)-(d) (Can.) (defining "property" to include "things in action" and "property of the bankrupt" to include "all property wherever situated ... at the date of his bankruptcy" and "such powers in or over or in respect of the property as might have been exercised by the bankrupt for his own benefit").

whether abstention on the basis of comity is therefore warranted.

## B. *Choice of Law*

■ Before analyzing the claims asserted by United Media, however, we must determine whose law governs each particular claim, for at least at first glance, the parties appear to disagree over whether Canadian or New York law governs in this case. United Media argues that the Court should give effect to the choice of law clause in the Written Agency Agreement to apply New York law to most of the claims asserted against the Vrooms in this case.[6] This argument is without merit, for it is well-settled under New York law that a contractual choice of law provision does not bind the contract's parties—let alone individuals who are not parties to the contract in question, such as the Vrooms— with respect to causes of action sounding in tort. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir.1996) (citing cases).

■ However, with respect to most of United Media's claims, the choice of law dispute is entirely theoretical, and the Vrooms effectively consent to the application of New York law. While the Vrooms suggest, in support of their *forum non conveniens* argument, that Canadian law applies in this case, that generalized suggestion for the most part disappears when they turn to discuss the legal sufficiency of United Media's claims, at which point they invoke Canadian law only when discussing United Media's fraudulent conveyance and veil-piercing claims. With respect to United Media's claims for breach of fiduciary duty, unjust enrichment, and conversion,

the Vrooms exclusively cite New York law and offer no evidence that Canadian law differs in any material respect. Accordingly, the Court concludes that the parties have impliedly consented, by their conduct, to the application of New York law to these particular claims. *See, e.g., Golden Pacific Bancorp v. FDIC,* 273 F.3d 509, 514 n. 4 (2d Cir.2001); *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir.1984); *Bartsch v. Metro-Goldwyn–Mayer, Inc.,* 391 F.2d 150, 155 n. 3 (2d Cir.1968) (Friendly, J.); *Larsen v. A.C. Carpenter, Inc.,* 620 F.Supp. 1084, 1103 (S.D.N.Y.1985), *aff'd mem.,* 800 F.2d 1128 (2d Cir.1986). While Fed.R.Civ.P. 44.1 authorizes courts, at their discretion, to examine the content of foreign law independently, using "any relevant material or source ... whether or not submitted by a party," the rule does not, by any means, "require them to do so in the absence of any suggestion that such a course will be fruitful *or any help from the parties.*" *Bartsch,* 391 F.2d at 155 n. 3 (emphasis added). Since the parties themselves appear to assume either that New York law governs these three claims or that Canadian and New York law are comparable in all relevant respects, the Court will proceed on the same assumption and apply New York law to United Media's claims for breach of fiduciary duty, unjust enrichment, and conversion.

However, with respect to United Media's claims for veil-piercing and fraudulent conveyance—the two claims as to which the parties genuinely dispute the governing law—the Court concludes that Canadian applies.[7] As a federal court sit-

---

**6.** Obviously, there is no question that federal law governs Count Nine of the Amended Complaint, which alleges federal copyright infringement.

**7.** Applying Canadian law to some of United Media's claims while applying New York law to others presents no difficulty. Under the choice of law principle referred to as *"dépe-*

çage," which is often applied by New York courts, " 'the rules of one system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate other issues.' " *Fieger v. Pitney Bowes Credit Corp.,* 251 F.3d 386, 397 n. 1 (2d Cir.2001) (quoting *Hutner v. Greene,* 734 F.2d 896, 901 (2d Cir.1984)); *see*

ting in diversity, we apply New York's choice of law rules to determine which jurisdiction's laws govern the claims asserted in the complaint. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's choice of law rules, the law of the place of incorporation "determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995) (citation and internal quotation marks omitted); *see also Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d 130, 132 (2d Cir. 1993) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.") (quoting *Soviet Pan Am Travel Effort v. Travel Comm., Inc.,* 756 F.Supp. 126, 131 (S.D.N.Y.1991)). Since Miller Features is incorporated in Ontario, the Court will apply Canadian law to analyze United Media's attempt to lift the corporate veil of Miller Features and impose liability directly upon the Vrooms.

■ With respect to the fraudulent conveyance claim in Count Seven of the Amended Complaint, the Court utilizes New York's "interest analysis" approach to give "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Under this approach, "the significant con-

tacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). These contacts "obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws." *Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996); *see Padula v. Lilarn Properties Corp.,* 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994) (jurisdiction with greatest interest "is determined by an evaluation of the 'facts or contacts which ... relate to the purpose of the particular law in conflict' " (quoting *Schultz,* 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679)). If the parties do not share a common domicile, and "the conflicting rules involve the appropriate standards of conduct" rather than the allocation of losses, then "the law of the place of the tort 'will usually have a predominant, if not exclusive, concern' " *Padula,* 84 N.Y.2d at 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (quoting *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679); *see Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993) ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."). Cases concerning the allocation of losses, by contrast, "will turn in significant part on the domiciles of the parties." *Krock,* 97 F.3d at 646 (citations omitted).

Here, the parties are domiciled in different jurisdictions, and it is clear that the conveyance alleged by United Media to be

---

*also Corporacion Venezolana de Fomento v. Vintero,* 629 F.2d 786, 794 n. 8 (2d Cir.1980) (doctrine of *dépeçage* "permits a more nuanced handling of certain multistate situations" than might otherwise be the case); *Simon v. Philip Morris, Inc.,* 124 F.Supp.2d 46,

75 (E.D.N.Y.2000) (doctrine of *dépeçage* "recognizes that in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense").

fraudulent—the transfer of funds held by Miller Features to the Vrooms—took place in Canada. Since United Media's fraudulent conveyance claim concerns laws regulating allegedly fraudulent conduct, the Court will apply the law of Canada, the jurisdiction in which the alleged tort occurred. Canada's "interests [1] in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and [2] in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests" that New York might have in applying its law to United Media's fraudulent conveyance claim. *Padula*, 84 N.Y.2d at 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001.

### C. *Breach of Fiduciary Duty*

In Count Two of the complaint, United Media alleges that the Vrooms owed a fiduciary duty directly to United Media, since United Media "entrusted them with funds belonging to United Media and they were aware of such entrustment," and that the Vrooms breached that duty by obtaining those funds and using them for their own purposes. (Amend.Compl.¶¶ 44, 46.) Those funds, United Media maintains, were not simply amounts owed to United Media by Miller Features, but rather were held by Miller Features in trust and for the benefit of United Media, which retained equitable ownership of the funds on account of the Written Agency Agreement and the parties' course of conduct. The Vrooms argue that no fiduciary relationship existed directly between them and United Media, and that no trust relationship existed between United Media and Miller Features.

We therefore first must address whether United Media adequately has alleged the existence of a trust relationship between United Media and Miller Features. The answer to this question bears not only upon whether United Media's breach of

fiduciary duty claim withstands the Vrooms' motion to dismiss, but also upon whether the Court should extend comity to the Canadian bankruptcy proceeding by abstaining from adjudication of that claim. Canadian bankruptcy law explicitly provides that property held by a debtor in trust for another does not constitute "property of the bankrupt" available for distribution to creditors. Bankruptcy & Insolvency Act, R.S.C.1985, ch. B–3, § 67(1)(a) (Can.); *British Columbia v. Henfrey Samson Belair Ltd.*, [1989] 2 S.C.R. 24, 31; *In re Hayes*, No. 35–950962, 1995 A.C.W.S.J. LEXIS 46777, *11–*12 (Ont.Gen.Div. Feb. 15, 1995); *cf. Begier v. IRS*, 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (under U.S. bankruptcy code, property held by the debtor in trust for another does not constitute "property of the estate"). To qualify as property "held by the bankrupt in trust" within the meaning of section 67(1)(a) of the Canadian Bankruptcy and Insolvency Act, the trust in question must possess the traditional "common law attributes of trusts." *Henfrey Samson Belair Ltd.*, 2 S.C.R. at 33. If the funds alleged to have been taken by the Vrooms were held in trust for United Media, as United Media maintains, then comity would provide no basis to abstain from adjudicating United Media's breach of fiduciary duty claim, since the funds allegedly transferred from Miller Features to the Vrooms would not be within the ambit of the Canadian bankruptcy proceeding in any event. By contrast, if those funds were not held in trust for United Media, then any transfer of those funds to the Vrooms necessarily would have involved property owned by the debtor, not United Media, and any claim that the transfer was wrongful would belong to Miller Features, not United Media.

A trust is a "fiduciary relationship with respect to property, subjecting

the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *Restatement (Second) of Trusts* § 2. New York law incorporates basic common law principles concerning the creation of trusts: to create a valid trust under New York law, four essential elements must be satisfied: (1) a designated beneficiary, who possesses an equitable ownership interest in the trust property; (2) a designated trustee, who possesses legal title to the property; (3) a clearly identifiable trust res; and (4) delivery of the res by the settlor to the trustee with the intent of vesting legal title in the trustee. *Agudas Chasidei Chabad of United States v. Gourary*, 833 F.2d 431, 433–34 (2d Cir.1987); *accord, Trustees of Edmonton Pipe Industry Pension Plan Trust Fund v. 350914 Alberta Ltd.*, 187 D.L.R.4th 23, 31–32 (Alta.C.A.2000) (under Canadian common law principles, essential elements of valid trust are certainty of intention to create trust, certainty of persons or objects to benefit from trust, and certainty of property that is to be the subject matter of trust). While the parties' intent to create a trust must be unequivocal and manifest, *In re Gagliardi's Estate*, 55 N.Y.2d 109, 447 N.Y.S.2d 902, 905, 432 N.E.2d 774 (1982), a trust may be created either orally or in writing, and "no particular form of words is necessary"—indeed, a trust "may emerge by implication from the acts or words of the person creating it ... so long as the intent to create such an implied trust arises as a necessary implication of unequivocal evidence." *Agudas Chasidei Chabad*, 833 F.2d at 434 (internal quotation marks and citations omitted); *see also* 106 N.Y.Jur.2d Trusts § 66 ("A trust creator is perfectly free and untrammeled in his use of language, so long as the language used clearly indicates an intention that ascertainable property is to be held by a fiduciary, and that the income therefrom is to be devoted to a specific purpose for an indicated period of time." (footnotes omitted)).

Here, United Media has adequately alleged the existence of a trust relationship with Miller Features in its complaint. While the word "trust" does not appear in the Written Agency Agreement, the agreement does appoint Miller Features to act as United Media's agent and, among other things, (1) to promote and deliver United Media's features—in which Miller Features explicitly acknowledges in the agreement that it acquires no rights—to United Media's Canadian clients and (2) to collect, disburse, and account for payments made by those clients *"for the benefit of* [United Media]." Agency Agreement ¶¶ 3, 5(b) (emphasis added). Miller Features therefore is presumed to be an agent-trustee of United Media, holding the proceeds from the sale of United Media's features in trust, for when a person turns over to another property for sale, the court must presume that the parties intended the transferee to keep the proceeds intact and to turn them over to the transferor in due course. *Harvey Brokerage Co. v. Ambassador Hotel Corp.*, 57 F.2d 727, 729 (S.D.N.Y.1932); *see Edwards v. Horsemen's Sales Co., Inc.*, 148 Misc.2d 212, 560 N.Y.S.2d 165, 166 (1989) (holding that auctioneer, as agent of seller, holds proceeds from auctioned goods in trust and has a fiduciary duty "to turn over the proceeds of the auction sale in full" to seller); *Air Traffic Conference v. Downtown Travel Center, Inc.*, 87 Misc.2d 151, 383 N.Y.S.2d 805, 806–07 (1976) ("Where money or property is entrusted to [an agent-trustee] for a particular purpose, it is impressed by law with a trust in favor of the principal until it has been devoted to such purpose."). As the New York Court of Appeals held over a century ago,

[t]he relation between a commission agent for the sale of goods and his principal is fiduciary. The title to the goods until sold remains in the principal, and when sold the proceeds, whether in the form of money, or notes, or other securities, belong to him, subject to the lien of the commission agent for advances and other charges. The agent holds the goods and the proceeds upon an implied trust to dispose of the goods according to the directions of the principal, and to account for, and pay over to him the proceeds from sales.

*Baker v. New York Nat'l Exch. Bank,* 100 N.Y. 31, 33, 2 N.E. 452 (1885); *In re Majority of Directors of James Chambers,* 17 A.D. 340, 45 N.Y.S. 264, 265 (1st Dep't 1897) (same); *cf. SEC v. American Bd. of Trade, Inc.,* 654 F.Supp. 361, 367 (S.D.N.Y. 1987) (under rule of "trust pursuit," any "funds or property coming into the hands of an agent are also held in trust by the agent for the principal"), *aff'd,* 830 F.2d 431 (2d Cir.1987). While the Vrooms may be able to rebut this presumption at a later stage of the litigation by showing circumstances inconsistent with a trust relationship, it must be remembered that the relationship of fiduciary and beneficiary "is the normal relationship when one man asks another to sell his property or collect his debts for him." *Harvey Brokerage Co.,* 57 F.2d at 729. Here, United Media has asked Miller Features to do both, and accordingly, the Court concludes that United Media adequately has alleged the existence of a trust relationship with Miller Features by which Miller Features held in trust the proceeds from the sale of United Media's features to United Media's Canadian clients.

■ The agency relationship here, however, was between United Media and Miller Features, and not directly between United Media and the Vrooms as individuals. We therefore proceed to consider the sufficiency of United Media's breach of fiduciary duty claim against the Vrooms. "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (2nd Dep't 1976); *see Mandelblatt v. Devon Stores, Inc.,* 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) (" 'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.' " (quoting *Restatement (2d) of Torts* § 874 cmt. a.)). While the "exact limits" of what constitutes a fiduciary relationship are "impossible of statement," a fiduciary relationship may be found in any case "in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Penato,* 383 N.Y.S.2d at 904.

■ In this case, the Vrooms argue that they did not enter into any fiduciary relationship with United Media, apparently drawing significance that they are not parties to the Written Agency Agreement. However, "it is not mandatory that a fiduciary relationship be formalized in writing." *Wiener v. Lazard Freres & Co.,* 241 A.D.2d 114, 672 N.Y.S.2d 8, 14 (1st Dep't 1998). Rather, the "ongoing conduct between parties" must be considered in order to assess, for example, "whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge." *Wiener,* 672 N.Y.S.2d at 14; *Fyrdman & Co. v. Credit Suisse First Boston Corp.,* 272 A.D.2d 236, 708 N.Y.S.2d 77, 79 (1st Dep't 2000); *see also Mandelblatt,* 521 N.Y.S.2d at 675–76 ("It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is inde-

pendent of the contract itself.") United Media's factual allegations that the Vrooms obtained possession of funds they knew to be held in trust for the benefit of United Media and proceeded to use those funds for their own purposes are therefore sufficient to state a claim for breach of fiduciary duty.

■ Since success on the merits of this claim would appear to depend upon United Media's establishing that the funds allegedly obtained by the Vrooms were, in fact, held in trust for the benefit of United Media, international comity provides no basis for abstention. If United Media succeeds in establishing that the funds in question were held by Miller Features in trust, then, as discussed earlier, those funds would have been outside the scope of the Canadian bankruptcy proceeding in any event. By the same token, if United Media fails to establish the existence of a trust relationship with Miller Features, then the claim fails on the merits, and abstention on the basis of comity is unnecessary. The Court therefore declines to abstain from adjudicating this claim on the basis of comity.

## D. *Unjust Enrichment*

■ Count Five of the complaint alleges that United Media conferred a benefit upon the Vrooms by entrusting them with property belonging to United Media, and that "the Vrooms would be unjustly enriched if they were permitted to retain monies collected from Canadian Clients on United Media's behalf and to withhold from United Media confidential documents and other records relating to United Media's clients." (Amend.Compl.¶¶ 61–62.) To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to

make restitution. *Astor Holdings, Inc. v. Roski,* No. 01 Civ.1905(GEL), 2002 WL 72936, at *17 (S.D.N.Y. Jan. 17, 2002).

■ While the Vrooms assert that United Media's unjust enrichment claim should be dismissed, they offer no argument in support of that assertion. In any event, United Media has adequately pleaded each of these elements here, and the Court finds no grounds for abstention on the basis of comity. Like its claim for breach of fiduciary duty, to which it is closely related, United Media's claim for unjust enrichment depends on whether it successfully establishes that the funds allegedly taken by the Vrooms were, in fact, held in trust by Miller Features. Since success on the merits of this claim will also defeat any grounds for abstention, the Court declines to abstain from adjudicating this claim on the basis of comity.

## E. *Conversion*

■ Count Six of the Amended Complaint alleges that the Vrooms have wrongfully converted funds belonging to United Media by refusing, in the face of United Media's demand, to turn over funds it alleges Miller Features to have been held in trust. (Amend.Compl.¶¶ 63–65.) "The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." *Republic of Haiti v. Duvalier,* 211 A.D.2d 379, 626 N.Y.S.2d 472, 475 (1st Dep't 1995); *Transamerica Comm. Fin. Corp. v. Roy A. Matthews of Scotia, Inc.,* 178 A.D.2d 691, 576 N.Y.S.2d 939, 942 (3d Dep't 1991) (to prevail on claim for conversion, plaintiff must "establish legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's

rights"). If the property in question is money, "it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Republic of Haiti*, 626 N.Y.S.2d at 475, *Key Bank of New York v. Grossi*, 227 A.D.2d 841, 642 N.Y.S.2d 403, 405 (3d Dep't 1996); *see also G.D. Searle & Co. v. Medicore Communications, Inc.*, 843 F.Supp. 895, 912 (S.D.N.Y.1994) (under New York law, "money can be the subject of conversion and a conversion action only when it can be described, identified, or segregated in the manner that a specific chattel can be, and the mere failure to pay a debt is not a conversion of the money owing.")

■ The Vrooms latch onto this last requirement, arguing that United Media merely alleges failure by Miller Features to pay money owed. This argument, however, mischaracterizes United Media's allegations. As with its claims for breach of fiduciary duty and unjust enrichment, United Media has not simply alleged that it is owed money, but that the Vrooms have wrongfully taken money that was held in trust for United Media's benefit. These funds, over which United Media clearly alleges an ownership interest, may well be "specifically identifiable" in the same manner as a chattel so as to be the proper subject of an action for conversion. As a result, United Media's conversion claim is sufficient to withstand the Vrooms' motion to dismiss, and since this claim also depends upon United Media's allegations of a trust relationship with Miller Features, international comity once again provides no basis for abstention.

## F. *Fraudulent Conveyance*

■ Count Seven of the Amended Complaint alleges that the alleged transfers to the Vrooms of funds held by Miller Features in trust for the benefit of United Media constituted a fraudulent conveyance. The Vrooms argue that the claim fails because the Amended Complaint fails specifically to allege that the Vrooms actually were the recipients of the alleged transfers, and that under Canadian law, United Media's fraudulent conveyance claim must be addressed in the bankruptcy proceeding.

The Vrooms' first contention, while clumsily stated, requires the Court to consider the sufficiency of United Media's factual allegations, for as a claim alleging fraudulent conduct on the part of the Vrooms, United Media's fraudulent conveyance claim is subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b).[8] As discussed earlier, Canadian law governs this claim, and under the Ontario Fraudulent Conveyances Act ("OFCA"),

> [e]very conveyance of real property or personal property and every bond, suit, judgment and execution heretofore or hereafter made with intent to defeat, hinder, delay or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, penalties or forfeitures are void as against such persons and their assigns.

Fraudulent Conveyances Act, R.S.O.1990, c. F.29, § 2 (Ont.). While United Media may prevail under the OFCA by proving intent to "defeat, hinder, [or] delay" creditors, the claim nevertheless is subject to Fed.R.Civ.P. 9(b)'s heightened pleading

---

8. While both parties treat this issue as a matter of the *substantive* law governing United Media's fraudulent conveyance claim, the degree of specificity with which United Media must plead this claim in its federal complaint is not a substantive question governed by New York or Canadian law, but rather a *procedural* question governed by the Federal Rules of Civil Procedure. *See Stern v. General Elec. Co.*, 924 F.2d 472, 476 n. 6 (2d Cir.1991); *cf. Hanna v. Plumer*, 380 U.S. 460, 463–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

requirements, since "all three means of damaging creditors are within a general category that the statute categorizes as 'fraudulent.'" *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 251 (2d Cir.1987) (applying Fed.R.Civ.P. 9(b) to claims arising under New York law).

 Under Fed.R.Civ.P. 9(b), a plaintiff alleging fraud must state "the circumstances constituting fraud ... with particularity." This exception to the generally liberal standard of pleading set forth in Fed.R.Civ.P. 8 helps to ensure that defendants receive fair notice of allegations of fraud and to protect them from the harm to reputation or goodwill that can result from such allegations. Since "[i]t is a serious matter to charge a person with fraud," a plaintiff is not permitted to do so "unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically." *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972), *see DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Accordingly, except as to "matters peculiarly within the opposing party's knowledge"—for which the allegations of fraud must be accompanied by "a statement of the facts upon which the belief is founded"—"[a]llegations of fraud cannot ordinarily be based 'upon information and belief.'" *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986) (internal quotation marks and citations omitted). Instead, the complaint must specify the "particulars" of the alleged fraud—including, for example, the time, place, particular individuals involved, and specific conduct at issue. *Id.* at 54. And while Fed.R.Civ.P. 9(b) provides that "malice, intent, knowledge, or other condition of mind ... may be averred generally," this proviso for allegations concerning state of mind does not give "license to base claims of fraud on speculation and conclusory allegations." *Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1128 (2d Cir.1994) (internal quotation

marks and citations omitted). The plaintiff still must allege facts giving rise to a "strong inference of fraudulent intent," which may be satisfied "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

Here, United Media clearly alleges that the Vrooms were the recipients of the allegedly fraudulent transfers, and while the Amended Complaint does not specifically allege the Vrooms to have acted with fraudulent intent, it does plead facts giving rise to a "strong inference of fraudulent intent" by alleging that the Vrooms (1) refused to respond to United Media's letters and phone calls demanding payment and transmittal of client records following termination of the Written Agency Agreement with Miller Features; and (2) continued to contact Canadian clients following termination of the agreement and informed them to continue paying the Vrooms for United Media's features. (Amend.Compl.¶¶ 22–23, 28–39.) The complaint does not, however, allege the "particulars" of the allegedly fraudulent transfers between Miller Features and the Vrooms—most notably, the Vrooms do not specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, or the consideration paid. *See Gindi v. Silvershein,* Nos. 93 Civ. 8679(LLS), 93 Civ. 8680(LLS), 1995 WL 347397, at *6 (S.D.N.Y. June 8, 1995) (dismissing fraudulent conveyance claim under Fed.R.Civ.P. 9(b) where complaint fails to "specify the transactions claimed to be fraudulent, nor when they occurred," nor the role of the defendants in those transactions). While some of those "particulars" may be peculiarly within the knowledge of the Vrooms, United Media in that case would be obliged to provide "a statement of the facts

upon which the belief is founded," *Luce*, 802 F.2d at 54 n. 1, and has not done so.[9]

The Vrooms' second contention is more doubtful, but not altogether irrelevant. The Vrooms' suggestion that United Media's fraudulent conveyance claim must be addressed in the Canadian bankruptcy proceeding suggests the possibility that the fraudulent conveyance claim itself might be property of the bankruptcy estate and therefore should be raised by the Canadian bankruptcy trustee on behalf of the estate and all of its creditors, rather than by a particular creditor such as Miller Features. It is clear that under U.S. bankruptcy law, fraudulent conveyance claims based upon pre-bankruptcy petition transfers by a debtor involve either property of the estate or claims against the debtor, and that in either case the estate trustee has exclusive authority to maintain such actions. *See In re Colonial Realty*, 980 F.2d 125, 130–32 (2d Cir.1992); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275–76 (5th Cir.1983). The parties do not address whether Canadian bankruptcy law treats fraudulent conveyance claims in a similar fashion, and whether international comity might justify abstention on that basis. However, since the Court concludes that United Media's fraudulent conveyance claim should be dismissed under Fed. R.Civ.P. 9(b), these questions need not be addressed unless United Media seeks leave to amend its complaint to replead this claim. *See infra* Part IV.

## G. Veil–Piercing Liability

█ Counts Eight of the complaint urges the Court to disregard the corporate veil of Miller Features, the Canadian debtor, to hold the Vrooms liable for the alleged misdeeds of Miller Features. The Vrooms maintain that whether New York or Canadian law applies, United Media has failed to plead sufficient factual allegations in support of this claim, arguing that both New York and Canadian law require United Media to plead more specific allegations in support of this claim than the bare, almost conclusory allegations presented in the Amended Complaint.[10]

Whether Fed.R.Civ.P. 9(b) applies to veil-piercing claims has been characterized as a "knotty question," *Farley v. Davis*, No. 91 Civ. 5530, 1992 WL 110753, at *6

---

9. Perhaps in part because of United Media's failure to plead this claim with particularity, it is not altogether clear what United Media even means to allege. As currently pleaded, the Amended Complaint alleges simply that "[t]he transfer of funds held in trust by [Miller Features] for the benefit of United Media to [the Vrooms] were fraudulent conveyances." (Amend.Compl.¶ 67.) To the extent that United Media means to allege the proceeds of any particular conveyance to the Vrooms did not actually belong to Miller Features at all, but instead were owned by United Media, that claim appears simply to duplicate United Media's trust-based claim for conversion and otherwise adds nothing to the complaint. On the other hand, if United Media means to allege that it was defrauded by any such conveyance *as a creditor of Miller Features*, that allegation would tend to undermine its assertion that the proceeds of any such conveyance were never property of Miller Features or the bankruptcy estate at all. Such an allegation also would suggest that abstention on the basis of comity is entirely appropriate, since a claim for fraudulent conveyance under those circumstances necessarily would allege a harm that affects all of Miller Features' creditors, not just United Media. Since United Media has not pleaded its fraudulent conveyance claim with the specificity required by Fed.R.Civ.P. 9(b), the Court need not resolve whether it is possible for United Media to state a claim for fraudulent conveyance that alleges particular injuries to itself, rather than injuries affecting all of Miller Features' creditors in precisely the same manner.

10. Again, while the parties treat this issue as a substantive question under either New York or Canadian law governing veil-piercing claims, the degree of specificity required in the complaint is a procedural question governed by Fed.R.Civ.P. 9(b). *See supra* note 8.

(S.D.N.Y. May 8, 1992), depending largely on whether the particular veil-piercing claim asserted in the complaint is based on allegations of fraud. *See Gabriel Capital, L.P. v. NatWest Finance, Inc.*, 122 F.Supp.2d 407, 433–34 (S.D.N.Y.2000); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 374–75 (S.D.N.Y.1997); *Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 121–22 (S.D.N.Y.1996); *Citicorp Int'l Trading Co. v. Western Oil & Refining Co., Inc.*, 771 F.Supp. 600, 608 (S.D.N.Y.1991); *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F.Supp. 126, 132 (S.D.N.Y.1991). For example, the heightened pleading standard in Fed.R.Civ.P. 9(b) need not be met in every case in which a claimant seeks to lift the corporate veil under New York law, since "New York courts will disregard the veil . . . *either* when there is fraud *or* when the corporation has been used as an alter ego," and under the alter ego theory of liability, a veil-piercing claimant may prevail by "identify[ing] some non-fraudulent 'wrong' attributable to the defendant's complete domination" of the corporation in question. *Rolls–Royce Motor Cars*, 929 F.Supp. at 121–22 (emphasis in original); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. at 374–75; *accord Soviet Pan Am Travel Effort*, 756 F.Supp. at 131 (noting that Maryland law permits corporate veil to be disregarded when necessary "to pre-vent fraud *or* enforce a paramount equity" (emphasis added)). Thus, a claimant must satisfy the heightened pleading standard of Fed.R.Civ.P. 9(b) to the extent that its veil-piercing claim rests on allegations of fraud. *See Gabriel Capital*, 122 F.Supp.2d at 433–34, *Soviet Pan Am. Travel Effort*, 756 F.Supp. at 132.

■ Canadian law does not leave much scope to disregard a company's corporate veil in the absence of fraud:

> The decided cases in which . . . officers of companies have been found personally liable for actions ostensibly carried out under a corporate name are fact specific. In the absence of findings of fraud, deceit, dishonesty or want of authority on the part of . . . officers, they are also rare. Those cases in which the corporate veil has been pierced usually involve transactions where the use of the corporate structure was a sham from the outset or was an afterthought to a deal which had gone sour.

*ScotiaMcLeod Inc. v. Peoples Jewellers Ltd.*, [1995] 26 O.R.3d 481, 491 (C.A.), *leave to appeal denied*, 137 D.L.R. 4th vi (S.C.C.). In the absence of fraud, the corporate veil ordinarily may not be disregarded, and directors and officers of a corporation "are protected from personal liability unless it can be shown that their actions are themselves tortious or exhibit a separate identity or interest from that of the company *so as to make the act or conduct complained of their own.*" [11] *Id.*

---

11. In its brief in opposition to the Vrooms' motion to dismiss, United Media suggests, based on a selective quotation taken out of context from *ScotiaMcLeod,* that the corporate veil may be disregarded if "the director or officer himself was tortious or exhibited a separate identity or interest from that of the company." Pl. Br. in Opp. at 21. This suggestion, however, mischaracterizes the statement of the law given in *ScotiaMcLeod,* as the full quotation from that decision (which is provided above, in the main text of this opinion) makes clear. While *ScotiaMcLeod* did note that directors or officers could be held personally liable under such circumstances, liability in those instances would not be imposed by disregarding the corporate veil and looking through the corporation to its principals, but instead would rest on the assertion of an independent cause of action directly against those individuals. In those instances, "the corporate veil is not threatened," *ADGA Systems Int'l Ltd. v. Valcom, Ltd.*, [1999] 43 O.R.3d 101, 105 (C.A.), and any liability imposed upon the corporation's principals would only result from "some activity on their part that takes them out of the role of directing minds of the corporation," and instead

(emphasis added). At oral argument, counsel for United Media confirmed that its veil-piercing claim rests on allegations of fraud. Oral Arg. Tr. at 31 ("The question is whether the corporation was used as an instrumentality to commit fraud."); *id.* at 32 ("[W]hat we have alleged here ... is the use of the corporate entity for fraudulent purposes."). Accordingly, the claim is subject to the heightened pleading requirement in Fed.R.Civ.P. 9(b).

United Media does not rely upon extensive factual allegations in support of its veil-piercing claim. The Amended Complaint alleges, upon information and belief, that Miller Features failed to observe corporate formalities and that the Vrooms, as owners or officers of Miller Features, "prompted, induced, supervised and/or materially contributed to" that corporation's allegedly wrongful acts. (Amend. Compl.¶¶ 4–5, 70–71.) According to United Media, the Vrooms fraudulently transferred to themselves funds held in trust by Miller Features for the benefit of United Media, whereupon they used those funds for their own personal purposes. (Amend. Compl.¶¶ 4–5, 46, 67, 71–72.) United Media asserts that it was injured as a result of the Vrooms' alleged misconduct, and based on these factual allegations, United Media claims that the Court should disregard the corporate veil of Miller Features and enter judgment directly against the Vrooms. (Amend.Compl.¶ 73.)

These allegations are insufficient to withstand the Vrooms' motion to dismiss. It is not enough for United Media simply to assert the conclusion that the Vrooms "did not observe corporate formalities"

and that they "fraudulently" transferred funds from the corporate entity to themselves for their own benefit. Rather, United Media must assert specific facts showing that the Vrooms were doing business in their individual capacities without regard to corporate formalities. *See Strojmaterialintorg v. Russian American Commercial Corp.,* 815 F.Supp. 103, 105 (E.D.N.Y.1993) (holding that veil-piercing claimant had failed to satisfy Fed.R.Civ.P. 9(b) because complaint "merely restates the appropriate legal standard to pierce the corporate veil and is absolutely devoid of any particularized allegation indicating *how* [the defendant] disregarded the corporate formalities" (emphasis added)). Even when a pleading is permitted upon information and belief under the exception for facts that are peculiarly within the opposing party's knowledge, the complaint still "must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990); *see Soviet Pan Am Travel Effort,* 756 F.Supp. at 132. The Amended Complaint provides no such statement of facts upon which United Media's information and belief is based. Without "particularized allegation[s]" indicating the circumstances of the Vrooms' allegedly fraudulent use of the Miller Features corporate form, therefore, United Media's veil-piercing claim must be dismissed.[12]

### H. *Federal Copyright Infringement*

■ Finally, Count Nine of the complaint alleges federal copyright infringe-

---

"make[s] the act or conduct complained of their own." *ScotiaMcLeod,* 26 O.R.3d at 491.

12. This conclusion, of course, does not insulate the Vrooms from liability. As discussed above, if the Vrooms made off with funds held by their corporate employer in trust for United Media, they are personally liable to United

Media for breach of fiduciary duty, unjust enrichment, and conversion. But they are not, without further facts specifically alleged, liable in the corporation's shoes for causes of action alleged against the corporate entity itself, such as breach of a contract to which only the corporation is party.

ment resulting from the Vrooms' posting on the Miller Features internet web site of certain images for which United Media owns valid copyrights that have been registered in the United States. (Amend. Compl.¶¶ 37–38, 74–79.) The Vrooms argue that this claim should be dismissed because (1) the claim is now moot, since Miller Features shut down its web site before the Amended Complaint was filed; and (2) the Amended Complaint fails to allege any infringement within the United States, and the copyright laws may not be given extraterritorial effect. With respect to the Vrooms' suggestion of mootness, United Media concedes that its request for injunctive relief is moot given that Miller Features has now taken down its web site and, with it, any copyrighted images alleged to have been posted on that web site. However, United Media's copyright infringement claim itself is not moot, since United Media may be entitled to statutory damages or actual damages and profits if it is able to prove that the Vrooms infringed upon its copyrights before the web site was taken down.

The Vrooms' second contention borders on the frivolous. While the complaint does not *specifically* allege that the Vrooms' alleged infringement occurred within the United States, when adjudicating the defendant's motion to dismiss under Fed. R.Civ.P. 12(b)(6), all reasonable inferences from the complaint's factual allegations must be drawn in favor of the plaintiff. *E.g., Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). It certainly does not take a tremendous logical leap to infer that since United Media alleges that it discovered infringing material on the Miller Features web site after the Written Agency Agreement was terminated (Amend. Compl.¶¶ 37–38), it likely did so in its New York offices and therefore any infringement on the part of the Vrooms or Miller Features took place, among other places, within the United States. Moreover, coun-

sel for United Media now explicitly represents that the allegedly infringing material was accessible from computers within the United States and that it is prepared to prove that the defendants' alleged copyright infringement had an effect within the United States. Oral Arg. Tr. at 34–35. The Court is amply satisfied that the complaint, as pleaded, states a valid claim for federal copyright infringement, and accordingly denies the motion to dismiss; nevertheless, in an abundance of caution, the Court grants United Media leave to amend its complaint, if it chooses to do so, to allege specifically that the defendants' infringement had an effect within the United States.

## IV. Leave to Amend the Complaint

Having granted the Vrooms' motion to dismiss United Media's fraudulent conveyance and veil-piercing claims pursuant to Fed.R.Civ.P. 9(b), we must consider whether to grant United Media leave to amend its complaint to replead these claims. The "usual practice" upon granting a defendant's motion to dismiss is to provide the plaintiff with an opportunity to amend the complaint. *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *see also Luce,* 802 F.2d at 56 ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." (citation omitted)). The decision whether to grant leave to replead is at the Court's discretion; however, denying leave to replead "without any justifying reason" can be an abuse of discretion. *Cortec Industries,* 949 F.2d at 48.

Here, the Court will not grant leave to replead United Media's fraudulent conveyance or veil-piercing claim unless it is satisfied that adjudication of that claim would not raise any comity-based concerns justifying abstention. Were the Miller Features bankruptcy pending before a bank-

ruptcy court in this country, the fraudulent conveyance and veil-piercing claims asserted by United Media might well be considered either property of the bankrupt estate or actions "to recover claims against the debtor," and therefore subject to the automatic stay provision of 11 U.S.C. § 362. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093–95 (2d Cir.1995); *Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132–35 (2d Cir. 1993); *In re Colonial Realty*, 980 F.2d 125, 130–32 (2d Cir.1992); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 696–702 (2d Cir.1989); *Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132, 135–36 (4th Cir.1988); *Koch Refining v. Farmers Union Central Exch., Inc.*, 831 F.2d 1339, 1343–51 (7th Cir.1987); *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275–76 (5th Cir. 1983); *see also* John D. Wilmore, *The Bankruptcy Trustee: Can an Alter Ego Sue In Alter Ego?*, 20 Cal. Bankr.J. 155 (1992).

As indicated above, the Court is inclined to afford the Canadian bankruptcy proceeding the same degree of deference that the Bankruptcy Code would require to be afforded a U.S. bankruptcy proceeding under comparable circumstances. In order to do so, however, the Court would need to consider questions that the parties thus far have neglected to address—for example, whether the Canadian bankruptcy trustee himself would have standing, under Canadian law, to assert fraudulent conveyance or veil-piercing claims against the Vrooms on behalf of the estate, and if so, whether abstention on the basis of comity therefore would be justified. *Cf. St. Paul Fire & Marine Ins. Co.*, 884 F.2d at 703–05; *In re MortgageAmerica Corp.*, 714 F.2d at 1275–76. Moreover, since United Media has other causes of action that can be asserted directly against the Vrooms as individuals without implicating these additional complexities of administration, there is little apparent equitable reason to authorize repleading to allow it to present additional claims that would likely delay proceedings by inviting a further round of motions.

Accordingly, the Court declines to decide on the present record whether to grant leave to replead these claims. If United Media chooses to seek leave to replead, it is directed to inform the Court within 15 days that it intends to move for leave to replead its fraudulent conveyance or veil-piercing claim to comply with Fed. R.Civ.P. 9(b). If it does so, the parties will be directed—and the Canadian bankruptcy trustee, as *amicus curiae* and through counsel, will be invited—to file supplemental briefs, on a schedule to be determined, on the issues identified here before the Court decides whether to grant United Media leave to replead these two claims.

## CONCLUSION

For the foregoing reasons, the Vrooms' motion to dismiss for lack of personal jurisdiction and forum non conveniens are DENIED. The Vrooms' motion to dismiss for failure to state a claim is GRANTED as to United Media's fraudulent conveyance claims, and as to all claims pled only against Miller Features that depend for their continued viability on piercing the corporate veil (Counts One, Three, Four, Seven, and Eight). Their motion to dismiss for failure to state a claim and for the Court to decline jurisdiction in the interests of international comity are DENIED as to all remaining claims in the Amended Complaint. The Court grants United Media leave to amend its complaint to replead its federal copyright infringement claim within fifteen days of this Opinion and Order. If United Media intends to seek leave to amend its complaint to replead its fraudulent conveyance and veil-piercing claims, it is directed to so inform the Court

by letter, also within fifteen days of this Opinion and Order, whereupon a briefing schedule will be established.

The parties also are directed to confer concerning a case management plan establishing a discovery schedule. Should the parties agree on an appropriate plan within fifteen days, they should submit that plan to the Court for its approval; otherwise, the Court will set a conference to consider any scheduling issues that need to be resolved.

SO ORDERED.